## STANTON *v.* UNITED STATES.

*(Circuit Court, D. Connecticut. January 14, 1889.)*

1. DISTRICT ATTORNEYS—CLAIMS—JURISDICTION OF COURT.
    Under act Cong. March 3, 1887, authorizing suits to be brought against the United States to recover items in the account of a district attorney suspended or disallowed by the accounting officer, and providing that the courts "herein mentioned" shall not have jurisdiction "to hear and determine other claims which have heretofore been rejected or reported on adversely by any court, department, or commission authorized to hear and determine the same," a district attorney is not concluded by the rejection of items in his bill by the department having charge of the auditing of the accounts of district attorneys.

2. SAME—COMPENSATION—ATTENDANCE ON COMMISSIONER BEFORE ARREST.
    Under Rev. St. U. S. § 824, providing for the compensation of district attorneys for the examination before a judge or commissioner of persons charged

with crime, the district attorney is entitled to his "*per diem*" for time necessarily spent in the investigation of an offense in co-operation with the commissioner before the arrest is actually made, and witnesses are sworn.

3. SAME—ATTENDANCE ON ARRAIGNMENT.

The district attorney is entitled to compensation for time actually and necessarily spent upon the arraignment before the commissioner, though no witnesses are examined, the magistrate having adjourned the hearing on motion of the accused.

4. SAME—APPLICATION OF ACCUSED TO TAKE INSOLVENT'S OATH.

Compensation is recoverable for the actual examination of the accused upon an application to take the poor convict's oath.

5. SAME—EXTRA WORK.

Under section 824, a district attorney who does two days' work in one is not entitled to a double fee.

6. SAME—DISCONTINUANCES.

An order remitting a criminal case from the circuit court to the district court, on motion of the district attorney, is not a judgment within the meaning of section 824, prescribing the fee of the district attorney in such cases.

7. SAME.

For services resulting in a discontinuance before a commissioner the district attorney is to be paid under the "*per diem*" clause of section 824, and not under the clause prescribing the fee for discontinuances.

8. SAME.

Where the accused is bound over by the commissioner to the district court, and the commissioner's record is sent to that court and docketed, a fee is recoverable for a discontinuance, although no information has been filed.

9. SAME.

Where the commissioner's record and bail-bond are returned to court, and an indictment is drawn, but the grand jury find not a true bill, a fee is recoverable for a discontinuance.

10. SAME—COMPROMISE OF CIVIL ACTION.

For services rendered by a district attorney in securing a compromise of a civil suit brought in favor of the United States, whereby the suit is dismissed without trial, he is only entitled to the fee of five dollars, allowed for a discontinuance.

11. SAME—EXTRAORDINARY EXPENSES.

Under section 846, providing that where the ministerial officers of the United States shall incur extraordinary expense in executing the laws thereof, the payment of which is not specifically provided for, the president is authorized to allow the payment thereof, etc., an action will not lie for money paid out by a district attorney to prevent the escape of an alleged criminal, the allowance not having been made by the president.

12. SAME—INTERNAL REVENUE CAUSES.

Under section 838, providing that it shall be the duty of every district attorney to institute the proper proceedings for any fines, penalties, and forfeitures which may have been incurred by reason of the violation of the internal revenue law, unless he shall decide that the ends of justice do not require such proceedings, in which case he shall make report, etc., and that for the expenses incurred and services rendered in all such cases he shall receive, etc., the district attorney is not entitled to recover for services unless prosecutions have been commenced.

13. SAME—CLERK HIRE—OFFICE EXPENSES.

He is entitled to recover for clerk hire and for necessary expenses of the office, such as telegrams and printing and stationery.

14. SAME—COSTS OF AUDITING ACCOUNT.

The court clerk's fees for recording the orders in connection with the auditing of the accounts of a district attorney should be paid directly to the clerk by the government.

At Law.

*Lewis E. Stanton, in pro. per.*

*Geo. G. Gill*, U. S. Dist. Atty.

SHIPMAN, J. This is a petition of Lewis E. Stanton, Esq., late district attorney of the United States for this district, which was brought to this court by virtue of the provisions of the act of March 3, 1887, entitled "An act to provide for the bringing of suits against the government of the United States," to recover those items in his accounts as district attorney which had been suspended or disallowed by the accounting officers, or which, although allowed, have not been paid. Said petition was duly served in accordance with the provisions of the sixth section of said act. The present district attorney of the United States for this district appeared, filed an answer, which denied an indebtedness by the United States to the petitioner, and upon the trial defended the interests of the government in said suit.

The first question in the cause is one of law, in regard to the jurisdiction of the court, and arises upon the language of the proviso in the first section of said act: "Provided, however, that nothing in this section shall be construed as giving to either of the courts herein mentioned jurisdiction * * * to hear and determine other claims which have heretofore been rejected, or reported on adversely by any court, department, or commission authorized to hear and determine the same." The position of the United States is that some of the items contained in the plaintiff's bill of particulars were, prior to March 3, 1887, rejected by the department which had charge of the auditing of the accounts of district attorneys; and that, as to those items, no other court is empowered by the statute to adjudicate. The position is sustained by the opinion of Judge BREWER in *Bliss* v. *U. S.*, 34 Fed. Rep. 781, which is hesitatingly followed by Judge WEBB in *Rand* v. *U. S.*, 36 Fed. Rep. 671. Notwithstanding the authority in its favor, I am not satisfied that this statute was merely prospective in respect to disallowed claims, but, on the contrary, think that this part of the proviso intended only to exclude from either of the courts claims which had been adjudicated by a court, department, or commission authorized to determine between the parties. A large part of the jurisdiction of the court of claims, before the enactment of this statute, consisted in the consideration of the validity of claims which had been rejected by the accounting officers of the government; and, among others, the decisions of the comptroller of the treasury were the subjects of revision. Section 191, Rev. St. If the construction which is now contended for is correct, this important branch of the business and duty of the court of claims would be abridged. It was not the intention of congress to diminish, but, on the contrary, to enlarge, the jurisdiction of that court. By statute a department is sometimes authorized to hear and finally determine in regard to specified classes of claims; as, for example, the department of the interior, and the commissioner of Indian affairs, are made final judges of certain claims; and it is an adjudication under this statutory authority by which complete power to pass upon the amount or validity of a claim had been given to a department or commissioner that reference is had in the pro-

viso under consideration. The words "hear and determine" are used three times in the first section. They are used twice to define the power of the courts to which new jurisdiction is given. Once they are used to express the power of the court, department, or commission which had previously passed upon the claim. The words are used each time in the same sense; that is, they refer to judicial determination after a hearing and weighing of testimony on both sides, and not to an *ex parte* accounting. I am well aware that the word "heretofore" seems, under this construction, to be of little value, but I think that the proviso was inserted out of abundant caution, lest subjects which had theretofore been adjudicated by an authorized tribunal could be reconsidered under this statute. If reliance is to be placed upon the opinion of the conference committee, upon whose report this proviso was inserted, it referred to claims which were *res adjudicata* upon being heard and determined before any department, court, or commission, and not to claims which had theretofore been rejected in the ordinary process of presentation and audit.

A number of the items in the plaintiff's bill, which were presented prior to March 3, 1887, were not rejected; no definite action was taken; they were suspended for further inquiry or statement. Some of them were disallowed, which seems to be equivalent to rejected. The items which were disallowed or rejected by the department prior to March 3, 1887, and which I allow, amount to $125. The suspended items which I allow amount to $349.50; and the admitted, but unpaid, items amount to $15.40.

The facts which are found to exist in regard to the several items in the bill of particulars are as follows:

The plaintiff was district attorney for this district from January 2, 1885, to April 2, 1888.

No. 1. The items in the half-yearly account of June 30, 1885, which were disallowed, are:

"Attendance before Commissioner in U. S. *v.* Meech, on January 17

| " | " | " | " | " | Prescott, | " | " | 19 |
| " | " | " | " | " | Meech, | " | Feb. | 18 |
| " | " | " | " | " | Roath, | " | Jan. | 29 |
| " | " | " | " | " | Prescott, | " | " | 14 |
| " | " | " | " | " | Richmond, | " | March | 30 |
| " | " | " | " | " | Mayer, | " | April | 28 |

—each at $5.00, and judgment in U. S. *v.* Thompson, circuit court, April term, $10.00. Total $45.00."

The first Prescott claim is not pressed. The Meech and Roath items, amounting to $15, arise upon the following facts. Meech and Roath were defaulting cashiers in two Norwich banks, and the cases were important. The days that are charged for were days necessarily spent in Norwich, at the request of the parties in interest, in the actual examination and investigation of the cases, partly in the office of the commissioner, but before the arrest was made; and no sworn testimony of witnesses was taken before the commissioner on the days which were disallowed. The action of the accounting officer is based upon a construction of section

824, which refuses "per diems" before commissioners, unless after arrest, and unless sworn testimony is actually taken before the commissioner. This construction of that portion of the section which relates to the subject of preliminary examination of criminal cases, is, in my opinion, incorrect. The language is: "For examination by a district attorney, before a judge or commissioner, of persons charged with crime, five dollars a day for the time necessarily employed." It frequently happens, especially in important cases, that much time is necessarily and exclusively spent by the attorney in the investigation, preparation, and examination of the cases before the arrest is actually made, and before witnesses are sworn. The result of this investigation is submitted to the commissioner, before whom complaint is made, before arrest. The Roath and Meech items are of that class. This general question was considered by Attorney General Black in 9 Op. Atty. Gen. 170, who came to the conclusion that there was no distinction between an investigation or examination before the warrant is issued, and that which comes before the committal, and that examination of the person charged includes an investigation of the case. Confining myself to the facts in this case, I think that the district attorney is entitled to a fee of five dollars per day for the time necessarily employed in consultation or co-operation with the commissioner, in the preliminary proceedings of a criminal prosecution before the actual arrest. The second Meech item was for a day necessarily spent in Norwich with the commissioner, upon the arrest of the accused upon a new information. These items are allowed. The item of five dollars for services in Prescott's case, on January 14th, is unobjectionable. The services were rendered and the day was spent before the commissioner in New Haven, after arrest, when the accused was arraigned. The Richmond and Mayer items involve the question whether, for actual services before commissioners, and for actual services not provided for by docket fee, before the circuit or district court, on the same day, a double fee of five dollars can be allowed. I think that the intention of congress in section 824 was to give only five dollars for the work of one day, which may not be provided for by docket fees; and if the attorney performs two days' work in one he is entitled to five dollars only. The item of $10 for judgment fee v. C. B. Thompson rests upon the following facts: Thompson was arrested in Vermont and was bound over to the circuit court. In this district, all criminal cases over which the district court has jurisdiction are tried in that court. Upon motion, the case was remitted to the district court. Although the affirmative ruling upon the motion was a final disposition of the case, so far as the circuit court was concerned, I do not think it could be called a judgment in the sense in which the word is used in the fee-bill, and which is a sentence or order pronounced on hearing of the points in issue, and determining the rights of the parties. This motion was a part of the ordinary routine business, for the performance of which the "per diem" of five dollars is given. Upon the items in No. 1, $20 are allowed.

No. 2. The claimed and unpaid items in the half-yearly account ending December 31, 1885, are as follows:

| | | |
|---|---|---|
| Travel and attendance before court, in case of Robert Jeffrey, | - | $ 15 40 |
| Attendance before Com'r, also charged before circuit court, | - | 20 00 |
| Services in case *v.* E. Williams, administrator, - | - - | 100 00 |
| Expenses in case of D. C. Rodman, - | - - - - | 2 50 |
| | | $137 90 |

The Jeffrey charge was suspended, but was afterwards allowed by the accounting officer, and is due for services actually rendered, and mileage, which was traveled, but has never been paid. The $20 rest upon the question which is stated and decided in the Richmond and Mayer items, and are disallowed. The claim for $100 in the Williams case depends upon the following facts: A civil suit in favor of the United States was brought against Ephraim Williams, Jr., as administrator of his father's estate. The questions in the case made a settlement desirable, in the opinion of the attorney. It remained in court some time, and by his vigorous effort an equitable compromise was made without trial, and the money upon the compromise was paid to the government. For his special services the item is charged. That the fee of five dollars which is allowed for a discontinuance is very inadequate compensation for the services rendered, and for the time which was spent, is manifest; but compensation is controlled and governed by the statutes, and there is no clause in the fee-bill, and no section of the statutes, which authorizes the payment of a larger or special fee for services in a civil suit in which the United States is plaintiff. The rule of law is correctly announced by Attorney General Black in 9 Op. Atty. Gen. 146:

"When a duty is enjoined upon him (the district attorney) by the law of his office, and not merely by the request of a department, he is bound to perform it, and take as compensation what the law gives him. * * * All civil suits in which the United States are a party of record fall within this principle. In them no charge for extra services can legally be allowed, though it be true that some of them require an amount of labor and skill for which the compensation allowed by the fee-bill is altogether inadequate."

The law is also thus correctly summarized in the opinion of Attorney General Bates, 10 Op. Atty. Gen. 489:

"A district attorney is entitled to receive for the prosecution of any civil action in which the United States is concerned, before a federal court of his district, only the fee provided by the act,"—now embodied in section 824.

To the charge of $2.50, which was paid to the judge of probate for copies of record which were ordered by the solicitor of the treasury, and which related to the estate of Daniel C. Rodman, a surety upon a collector's bond, no objection is made, but it is unpaid. Upon the items in No. 2, $17.90 are allowed.

No. 3. Upon the account for the first half year of 1886, the attorney claims eight per diems before commissioners, of five dollars each, which were suspended, and are still unpaid, viz.: January 23d, B. C. Thompson; February 6th, Charles Bunnell; February 25th, D. H. Holcomb; February 28th, Manna Alderman; February 29th, George J. Hinman;

March 10th, Coleman & Bement; May 17th, Nathan Rose. All these days were actually and necessarily spent upon the arraignment before the commissioner, after arrest. Upon the suspended days no witnesses were examined, for the reason that the magistrate adjourned the hearing, for reasons satisfactory to himself, upon motion of the accused. The attorney was present upon each of the days, for the purpose of the examinations. The item of $40 is allowed, and of $2 for unpaid and due mileage. The attorney also claims $105, the same being admitted items of this account, which the accounting officer suspended, because an examiner of the department of justice had reported, in 1886, that upon 21 court days in 1885, which had been paid for in the account for that year, no business was done. The examiner made a subsequent report that the days were business days. The suspension was continued that the attorney might show that upon these days he was necessarily employed in court upon the business of the government. The suspension was upon the ground that if the attorney could not explain satisfactorily the required facts in regard to the days in 1885, the sum of $105 should be set off against a like sum, which was admitted to be due upon the account for the first half of 1886. No notice of set-off or counter-claim is made or pleaded. If it is not necessary to give notice of such a defense, the facts in the case are substantially identical with those hereafter stated in regard to item d of No. 4. In the last half of 1885, the attorney necessarily attended 21 days in a court of the United States, in the business of the United States, less those hereinafter deducted by his agreement. Upon No. 3, $147 are allowed, less the amount hereinafter agreed by the attorney to be deducted for absences in August, 1885.

No. 4. Upon the account for the half year ending December 31, 1886, the attorney claims:

(a) For 14 discontinuances before commissioners, at $5,  -  -  $ 70
(b) For 4 per diems before commissioners—U. S. v. Bartram, September 27th; U. S. v. Willis, October 18th; U. S. v. Plumb, July 14th; U. S. v. Penard, October 6th, -  -  -  -  -  20
(c) 4 charges for discontinuances in district court,  -  -  -  20
(d) 39 court per diems in circuit and district courts,  -  -  195

The facts in regard to item a are as follows: These were criminal cases for violation of the internal revenue acts, upon which propositions for compromise were made and forwarded to the commissioner of internal revenue. To save expense to the accused, who must pay the costs, and for simplicity of procedure, the accused were not bound over, but the cases were adjourned by the commissioner; the accused being upon bail, until an acceptance or rejection of the offers of compromise. They were all accepted, and by direction of the commissioner of internal revenue the cases were discontinued, and for the services a discontinuance fee is charged. The judgment and discontinuance fees in section 824 refer, in my opinion, to fees for services in the circuit or district courts. All services before commissioners are payable under the *per diem* clause. For the services which resulted in a discontinuance before the commissioner upon his docket, or the withdrawal of the case, I see no reason why the

*per diem* fee of five dollars is not justly chargeable, for the reasons which have been heretofore given. The service is a necessary one, requires time, is useful, and is in the interest of economy and efficiency. Upon an amendment of the bill of particulars, the sum of $70 will be allowed.

The charge in item *b* is properly made. The days which are charged were necessarily spent in actual attendance before commissioners, upon the arraignment after arrest, in the examination of the accused. The Willis case was the actual examination of the accused upon an application to take the poor convict's oath under section 1042 of the Revised Statutes. He was supposed to be possessed of property. The fee is payable under section 824.

The charge in item *c* is properly made. In four cases before commissioners the accused were bound over to the district court, the commissioner's record, with the bail-bonds, were sent to the court, and were docketed. The cases were then discontinued, and the discontinuance fees were not regarded by the accounting officer as payable, because no information had been filed. When the commissioner's record has been returned to and docketed in the district court, the case is in that court, and remains there until it is disposed of by affirmative action. The accused then appears, and can ask for a reduction of the bond; or the bail-bond can be called or forfeited. This is in accordance with the uniform usage of the district court in this district, and is in harmony with the usage of the state courts of this state.

The charge in item *d* is one upon which the action of the accounting officers has not been uniform. Sometimes a like charge is allowed. The suspension was for information as to whether the attorney was actually present on those days upon business of the United States; Hartford, the place where the court was held, being the place of the attorney's residence. The facts are as follows. In this district the terms of the courts, as a rule, continue until the succeeding term commences. The circuit court, as a court of equity, is always open, and the district court is open for the performance of the business appropriate to that court; but no days are entered upon the minutes of the clerk as "court days" unless business is actually done, or, having been regularly assigned, is postponed. Fifty-seven court days are entered upon the minutes during this half year, and the attorney was in necessary attendance in court upon the business of the United States for 53 separate days, perhaps more; but the custom of the present attorney, who lives in Hartford, has been to take the record of the clerk as the days for which the charge is to be made, and not to keep a separate account of each day, and of the business which he transacted,—a custom which is in the interest of economy, and of convenience to the court. The business of the office and the requirements of the government are of that character that frequent attendance in court, at the clerk's office, or at the judge's chambers, is necessary, for which the *per diem* compensation is allowed, and without which the office is of little pecuniary value. Upon No. 4, $305 are allowed, less the amount hereinafter agreed by the attorney to be deducted for absence in August, 1886.

No. 5. For account for quarter ending June 30, 1887, $325. Of this amount $320 has been allowed, but has not been paid. One "court day" of five dollars was suspended, but should be paid for reasons heretofore stated. Upon No. 5, $325 are allowed.

No. 6. Upon quarterly account for quarter ending September 30, 1887, the attorney claims:

For twenty-three court "per diems" during the quarter,    -        - $115 00
For attendance before a commissioner in U. S. v. Sparks, August
   12th, and U, S. v. Roemer, August 15th,    -        -        -    · 10 00

The "per diems" are due for 23 days of necessary attendance in court on the business of the United States, and are allowed for the reasons heretofore stated. There is no assistant attorney in this district, and in the absence of the plaintiff from the state, upon his summer vacation, he employed counsel to represent him in the two named cases, who attended before the commissioner. The attorney paid them $10. The two items are allowed, amounting to $125.

No. 7. Upon quarterly account for quarter ending March 31, 1888, the attorney claims:

Two per diems in U. S. v. W. C. Griswold, -    -        -        - $ 10 00
Discontinuance of U. S. v. Parker,    -        -    -    -    - · 5 00
Thirty-one court days,    -        -    -    -    -    - 155 00

The days in the matter of Griswold were necessarily spent before the commissioner after arrest, and upon arraignment, and the fees should be allowed. In U. S. v. Parker the commissioner's record was returned to court, with the bail-bond, and an indictment was drawn, but the grand jury found not a true bill. This action did not discharge the accused, for a new indictment could have been presented to another grand jury. In order to discharge the accused and his bondsmen, the case must be discontinued. The fee was properly charged. The 31 court days rest upon the same grounds which have been previously stated, the attorney having necessarily attended 31 days in a court of the United States on the business of the United States. Upon No. 7, $170 are allowed.

No. 8. To cash paid O. D. Seymour for services in the arrest of R. S. Hicks, $32.83. Had the accounting officers understood the nature of this bill it would undoubtedly have been approved, and authority have been obtained for its payment; for the bill is an eminently just one. The special expenses were incurred, and were specially taken, under a widely entertained apprehension that the accused would escape, and in consequence of a determination that the laws should be executed. They were entered into upon careful consideration and consultation with those who were in a situation to give advice. If the accused had escaped, the attorney would have been reproached. But, under section 846—the only section which relates to the subject—it is not a debt for which an action will lie. The clause of the section which relates to extra expenses of this sort provides "that where the ministerial officers of the United States have or shall incur extraordinary expense in executing the laws thereof, the payment of which is not specifically provided for, the president of

the United States is authorized to allow the payment thereof under the special taxation of the district or circuit court of the district in which the said services have been or shall be rendered, to be paid from the appropriation for defraying the expenses of the judiciary." The president alone is vested with power to allow the payment of this class of expenses, after they have been specially taxed. If he does not think that the allowance is proper, or does not authorize the payment, they cannot be paid, and with his decision the courts cannot, in my opinion, interfere.

No. 9. To cash paid for telegrams for the United States from September 25, 1885, to March 31, 1888, $38.37. Copies of these telegrams were kept, and were produced and examined. They are the ordinary and necessary communications in regard to criminal business, were a part of the necessary expenses of the office, and were necessarily sent in the course of official business. The amount of the bill is allowed.

No. 10. Clerk hire from January 2, 1885, to April 2, 1888, approved by attorney general, but rejected by comptroller, $699. In view of the large amount of clerical work in the way of reports which is required by the departments, and of the amount of business which the attorney was called upon to perform in the collection of internal revenue, at the instance of the collector of revenue, the assistance of clerks was important and necessary, and was obtained. The amount claimed, and which was paid by the attorney, being about $216 per annum, is a moderate one, and should be allowed. This item, with the next one, is payable under section 835.

No. 11. Cash paid from January 2, 1885, to April 2, 1888, on account of printing and stationery of the United States, $64.55. The bill was a part of the necessary expenses of the office. The articles therein mentioned were furnished and were paid for, and the bill is allowed.

No. 12. Fees for examination, and report to the secretary of the treasury, under section 838, of 37 "No Pros." customs cases, and for like services to commissioner of internal revenue, in 192 "No Pros." internal revenue cases, at $5 each, $1,145. These were cases which were reported to the attorney by the proper officers in this district, were examined, and, for adequate reasons, were settled without suit, or were not prosecuted. The attorney claims, under section 838, that a proper and adequate fee for his services should be paid. The secretary of the treasury rejected the claim, after its presentation in the year 1888, upon the ground that payment thereof is unauthorized by the section, which is as follows:

"It shall be the duty of every district attorney to whom any collector of customs or of internal revenue shall report, according to law, any case in which any fine, penalty, or forfeiture has been incurred in the district of such attorney for the violation of any law of the United States relating to the revenue, to cause the proper proceedings to be commenced and prosecuted without delay for the fines, penalties, and forfeitures in such case provided, unless upon inquiry and examination he shall decide that such proceedings cannot probably be sustained, or that the ends of public justice do not require that such proceedings should be instituted, in which case he shall report the facts in customs cases to the secretary of the treasury, and in internal revenue

cases to the commissioner of internal revenue, for their direction. And for the expenses incurred and services rendered in all such cases the district attorney shall receive and be paid from the treasury such sum as the secretary of the treasury shall deem just and reasonable, upon the certificate of the judge before whom such cases are tried or disposed of."

This question has been frequently under consideration by the treasury department, and the secretary followed the practice since 1873. If section 838 was the only one which now relates, or has related, to this class of cases, the construction of the attorney, and for which he has the authority of *U. S.* v. *Bliss*, 23 Fed. Rep. 26, would seem to be the correct one; but, as pointed out by Attorney General Brewster, in his opinion in 31 Int. Rev. Rec. 70, section 838 was an amendment, in 1873, of the seventh section of the act of July 18, 1866, now re-enacted as section 3085 of the Revised Statutes, which is as follows:

"District attorneys, upon receiving the report of a collector, shall cause suit and prosecution to be commenced and prosecuted without delay for the fines and personal penalties by law in such case provided, unless upon inquiry and examination they shall decide that a conviction cannot probably be obtained, or that the ends of public justice do not require that a suit or prosecution should be instituted, in which case they shall report the facts to the secretary of the treasury for his direction. For expenses incurred and services rendered in prosecutions for such fines and personal penalties, they shall receive such allowance as the secretary of the treasury shall deem just and reasonable, upon the certificate of the judge before whom such prosecution was had."

It is obvious that the payment provided by section 3085 is only where prosecutions have been actually commenced, and that section 838 was an enlargement of the pre-existing statute, so as to make its provisions applicable to internal revenue cases also. Viewed in this historical light, the provisions in the two sections in regard to payment for services are of the same character; and, notwithstanding the phraseology of section 838 is somewhat different from the pre-existing statute, I am of opinion that it was not the intention of congress to authorize payment for these services, unless prosecutions had been commenced. The opinions of Attorney Generals Brewster and Garland are to the same effect.

No. 13. The attorney also presents a bill of the clerk of the district court for original and duplicate orders passed in approval of the attorney's accounts in accordance with the statute of February 22, 1875, (18 St. 333,) since July, 1886,—$26.90. The clerk's fees on similar orders were paid prior to July, 1886, by the government, but since that date have been disallowed, as chargeable only to the attorney. The statute requires that the officer shall prove, in open court, his services, and that the court shall thereupon cause to be entered of record an order approving or disapproving the account. The clerk's fees for these orders are in accordance with the fee-bill. By the statute the judge of the court is made an auditing officer, and the clerk is compelled to enter the auditing orders in the records. For these auditing services, so far as they are provided for in the fee-bill, the government, which requires the services to be rendered, is indebted to the clerk. The officers whose accounts are audited are not required by the statute to pay the expenses of the

audit. The bill should be paid directly by the government to the clerk. It is not properly chargeable to the attorney, and therefore should be here disallowed. Upon the foregoing bill, as allowed, $255 have been paid since suit was brought, and the attorney agrees that $45 should be deducted for absences in August, 1885, and August, 1886. Let judgment be entered in favor of the petitioner for the sum of $1,611.82, and the taxable costs under the statute of March 3, 1887.