## THE STATE v. JOHN CONNORS, Appellant.

**Division Two, March 14, 1911.**

1. **GRAND JURY: Eleven Members Present: Perjury.** Where twelve men were duly and properly summoned, sworn and impaneled as grand jurors, the fact that one of them was absent, without being discharged, did not disable the remaining eleven from investigating criminal charges; and if defendant was called before said grand jury when only eleven were present, an indictment properly found and returned by a subsequent grand jury, charging him with having then sworn falsely, is not invalid simply because only eleven of the panel were present when he testified.

2. **WITNESS: Child.** The question of whether a boy eight and a half years old is a competent witness must be left largely to the discretion of the trial court. And where his preliminary examination and his subsequent testimony show he was competent, the appellate court will not hold that he was incompetent.

Appeal from St. Louis City Circuit Court.—*Hon. Geo. H. Shields,* Judge.

AFFIRMED.

*Henry M. Walsh* for appellant.

(1) Eleven men do not constitute a lawful grand jury, and one composed of only that number present cannot investigate criminal matters. Mo. Constitution, art. 2, sec. 28; State v. Vaughn, 132 Mo. App. 141; Ex parte Ogle, 61 S. W. (Tex.) 122; Ogle v. State, 63 S. W. (Tex.) 1009; Doyle v. State, 17 Ohio 222; State v. Wilson, 85 Mo. 138; R. S. 1909, sec. 7271. There is no evidence to show that a grand jury, in conformity with the statute, had ever been legally summoned. The evidence shows that there was an order properly made, that subsequently twelve men were sworn in to serve as a grand jury, but there is no evidence to show that they were twelve men selected from forty-five

good and lawful men, drawn by the jury commissioner from the grand jury wheel, nor is there any return of the sheriff showing that any number of men had ever been summoned by the sheriff. It may be possible to assume that the sheriff did actually summon forty-five true and lawful men in strict compliance with the law, but it must be an assumption, for there is nothing in the record of the evidence to show that such a thing was done. (2) A careful review of the evidence will not disclose a single line which will show that the defendant saw the shooting of John Hutton, or that he actually knew who shot Hutton, or that he was in a position to see who did shoot him. (3) The child, George Brazier, who was the main witness for the State in the effort to show the knowledge of Connors, was not such a competent witness as is intended in cases of this character. His full qualifications to testify as a witness were testified by the court, who, however, said that although the witness did not know the quality or sanctity of an oath, had no fear of punishment if he told anything that was not true, yet "he seems to tell a pretty straight story about what took place."

*Elliott W. Major*, Attorney-General, and *Chas. G. Revelle*, Assistant Attorney-General, for the State.

(1) The evidence fully establishes that the judges of the circuit court, in general term, properly ordered the sheriff to summon a panel of forty-five good and lawful men, whose names should be taken from the grand jury wheel in the manner provided by law, to appear on December 8, to serve as grand jurors for the December term, and that on said December 8 the sheriff made return of the names of twelve good and lawful men, summoned by him to so serve, and that said men were accepted, impaneled, sworn, and charged by the court, and entered upon the discharge

of their duties. This was in compliance with the statute. R. S. 1909, art. 5, chap. 64. (a) Appellant, however, says that there is no evidence to the effect that these particular twelve men were selected from the forty-five men who had been chosen by the jury commissioner from the grand jury wheel, and that there is no return of the sheriff showing that he had, in fact, summoned any one. The court's record fully meets the last named objection and shows that the proper return was made by the sheriff. The other objection is overcome by the general presumption of regularity which attends the official acts of a public officer and the proceedings of a court. State v. Orrick, 106 Mo. 118; State v. Overstreet, 128 Mo. 472; State v. Vaughn, 132 Mo. App. 140; State v. McKee, 212 Mo. 138. (b) While the proceedings disclosed by this record, in respect to the summoning of the grand jury, were regular, yet, if they had not been, this would afford no basis for complaint, since the statutes governing such matters have, since 1853, uniformly been held merely directory, and noncompliance no ground for interference. State v. Bleekly, 18 Mo. 429; State v. Hart, 66 Mo. 208; State v. Matthews, 88 Mo. 121; State v. Gleason, 88 Mo. 582; State v. Jackson, 167 Mo. 291; State v. Riddle, 179 Mo. 293; State v. Crane, 202 Mo. 54. (2) While his insistence, that when a grand jury is impaneled twelve men must be selected, is quite right, yet this falls far short of supporting his claim that a full panel must be present at every stage of the proceedings, and that during the temporary absence of one the body becomes disorganized and cannot transact business. This identical question has been so elaborately discussed and uniformly decided adversely to appellant's contention that it must now be considered settled. The rule is thus correctly expressed: "If a sufficient number of grand jurors has been impaneled, the absence of one or more jurors does not affect the organization of the grand jury

or disable it from investigating criminal charges and
finding indictments, providing the minimum number
which is required to concur in the finding of an indict-
ment remains and does concur.'' 17 Am. & Eng. Ency.
Law, p. 1281, par. 14; State v. Miller, 3 Ala. 343; State
v. Copp. 34 Kas. 529; State v. Billings, 77 Iowa 421;
State v. Ostrander, 18 Iowa 443; State v. Clayton, 11
Rich. 581; State v. Williams, 35 S. C. 352; Glidden
v. State, 12 Fla. 567; People v. Simmons, 119 Cal. 1;
Smith v. State, 19 Tex. App. 108; Drake v. State, 25
Tex. App. 309; Portis v. State, 23 Miss. 583; State v.
Causey, 43 La. Ann. 898. The evidence in this relation
discloses that the juror had not been finally discharged
by the court, but was merely absent temporarily, and
that at the time appellant testified eleven members of
the grand jury were present. The cases cited and
quoted from by appellant relate solely to the number
of grand jurors which must, in the first instance, be
impaneled and do not in any manner deal with the
question of a lesser number transacting business after
a full panel has been legally and properly selected and
organized. (3)  An examination of the record rela-
tive to the test made of the competency of George Bra-
zier as a witness readily discloses his proper qualifi-
cations. He was eight and one-half years old, attended
school and was in the second reader, realized that the
oath he took required him to tell the truth and noth-
ing but the truth, and that if he testified falsely ''he
would go to the devil and burn up,'' and that he could
also be sent to the penitentiary while living. In ad-
dition to this, the court excluded the jury and heard
all his testimony and cross-examination before passing
upon his competency, or permitting the jury to hear
his testimony, and throughout the test he acquitted
himself well and manifested intelligence. State v.
Doyle, 107 Mo. 41. The issue of incompetency of a
child under ten years is one for the trial judge, and
this discretion will not be disturbed on appeal unless

affirmatively shown to have been abused, and that that discretion was not abused in this case is evident from the following cases: State v. Scanlan, 58 Mo. 204; State v. Jeffries, 210 Mo. 302; State v. Prather, 136 Mo. 20; State v. Nelson, 132 Mo. 198. (4) Appellant, while conceding the sufficiency of the evidence to establish that he testified before the grand jury, as charged, insists that the proof is not sufficient to show that these statements were false. The rule that the testimony of at least two witnesses is required to convict one of perjury, is not followed by the courts of this day, and has been expressly repudiated by this court. While a conviction will not be sustained upon the evidence of a single uncorroborated witness, it is now generally held that any facts or circumstances which are strongly corroborative of the accusing witness will be sufficient. State v. Heed, 57 Mo. 253; State v. Blize, 111 Mo. 469; 1 Greenleaf on Ev., sec. 257. The first assignment of perjury is overwhelmingly established by direct evidence, many witnesses testifying to appellant's presence and sobriety on the occasion of the difficulty. The fact as to whether or not he was present was material and of the utmost importance, since it was the duty of the grand jury to fully investigate the shooting, ascertain whether he, or some other person, participated therein, and learn from him all he witnessed, if he was present. This was an important link. Ward v. State, 2 Mo. 121; State v. Moran, 216 Mo. 557; State v. Ackerman, 214 Mo. 331; State v. Faulkner, 175 Mo. 546. Sufficient proof of this one assignment would sustain the indictment, although it contained other charges. State v. Gordon, 196 Mo. 201; State v. Blize, 111 Mo. 473; State v. Taylor, 202 Mo. 5. The other charges submitted to the jury are also sustained by proof of his presence in the room where the shooting took place, his sobriety on that occasion, his statements and conduct both immediately before and after the difficulty. In

his brief appellant says the record does not affirmatively disclose that he was in such a position in the room as to see who did the shooting. The very fact that he has failed to preserve in this record all the evidence relating to this phase of the proof wholly precludes him from now insisting that the evidence is insufficient. The transcript discloses that a map of the arrangement of the room, its furniture, fixtures, etc., was exhibited to the jury and witnesses, and by it the witness indicated to the court and jury the whole arrangement. An appellate court will not hold a conviction to be unsupported by evidence where the lower court has before it evidence which the appellate court cannot examine, and witnesses who add to their words physical indications of things done in connection with the matter, merely because the words fall short. Mahoney v. People, 3 Hun 205; Mahoney v. People, 59 N. Y. 659; State v. Bobbitt, 228 Mo. 265; State v. Taylor, 202 Mo. 5.

FERRISS, J.—On January 17, 1909, officer Hutton, of the St. Louis police force, was shot and wounded while attempting to quell a disturbance in the West End Club, in that city. The defendant, who was present, was called before the grand jury as a witness to the shooting. This indictment is founded upon his testimony before that body, where he denied seeing the shot fired, and denied recollection of the events, testifying that he was drunk on that occasion. He was tried and convicted of perjury, March 3, 1910, in the St. Louis Circuit Court. He appeals to this court to reverse the judgment, and urges in his brief the following alleged errors:

1. There was no properly or legally summoned grand jury.

2. Eleven members, instead of twelve, constituted the grand jury at the time the defendant was

brought before them to testify as to the things upon which the indictment is bottomed.

3. The witness, George Brazier, was not competent to testify, neither as to age nor as to his mental capacity, not being aware of the sanctity of an oath.

4. There was no affirmative evidence to go to the jury on the question of the ability of the defendant to recall what had occurred at the time of the shooting.

5. The instructions of the court were erroneous and misleading and misdirected the jury as to the law.

6. The statements made by counsel for the State, both in the opening and closing arguments, were outside the record and prejudicial to defendant.

We will take these points up in the above order.

*First*: The usual and proper order was made by the court to summon a grand jury. The usual and proper return was made by the sheriff, showing that he had summoned twelve good and lawful men. It will be presumed that the intermediate steps provided by law—drawing from the wheel by the jury commissioner, etc.—were properly taken.

*Second*: Twelve men were duly accepted and sworn as grand jurors, and entered upon the discharge of their duties. The defendant was called before this body of jurors, and examined as a witness concerning a case then under investigation. The charge of perjury, upon which he was convicted, was based upon his testimony before such grand jury. It developed during the trial of defendant that on the day he was examined before the grand jury, one of their number was not present, and that the testimony of defendant was given before eleven members only of the grand jury. It does not appear that the absent juror had been discharged from the panel.

Defendant contends that eleven men could not constitute a grand jury for the purpose of hearing and

deliberation. His position is that, although nine grand jurors may concur in finding an indictment, not less than twelve can act as a jury, in hearing testimony and deliberating thereon. He urges that, although the law permits nine men to decide, it still requires the presence of the other three at the hearing in order to get the benefit of their suggestions, opinions and arguments.

The question seems to be one of first impression in this State. The Constitution of Missouri, art. 2, sec. 28, provides: "Hereafter, a grand jury shall consist of twelve men, any nine of whom concurring may find an indictment or a true bill."

To carry this provision into effect, the Legislature enacted the following statute: "No indictment can be found without the concurrence of at least nine grand jurors; when so found, and not otherwise, the foreman of the grand jury shall certify under his hand that such indictment is a true bill, by the following indorsement thereon, thus: 'A true bill. A. B., foreman.' " [Sec. 5090, R. S. 1909.]

Under this law, twelve men must be impaneled and sworn to constitute a legal grand jury, but after such organization, nine may concur in a finding. The law does not in terms require more than nine to participate in a hearing. The question raised here has been decided adversely to the contention of defendant by the courts of several states, construing provisions similar in substance to those found in the Constitution and laws of Missouri. [State v. Miller, 3 Ala. 343; State v. Copp, 34 Kan. l. c. 529; State v. Billings, 77 Iowa l. c. 421; State v. Ostrander, 18 Ia. l. c. 443; People v. Simmons, 119 Cal. 1; Smith v. State, 19 Tex. App. l. c. 108; State v. Lightfoot, 107 Ia. 344; State v. Williams, 35 S. C. l. c. 352.]

The case of Norris House v. State, 3 Green (Ia.) l. c. 515, cited and relied upon by defendant is limited by later decisions in Iowa, cited above, and approv-

ed only in so far as it holds that it is proper for the court to impanel the full number and keep the number full, and hence is no authority for the proposition contended for here.    Neither the diligence of counsel nor the researches of the court have discovered any decisions contrary to those above cited.    The doctrine of the above cases is summarized in 17 Am. & Eng. Ency. Law, (2 Ed.) p. 1281, as follows: "If a sufficient number of grand jurors has been impaneled, the absence, death, excusal, or discharge of one or more jurors does not affect the organization of the grand jury, or disable it from investigating criminal charges and finding indictments, providing the minimum number which is required to concur in the finding of an indictment remains and does so concur."

We think the proposition thus enunciated sound in principle, and so hold.

The objection last discussed is the one on which defendant chiefly relies, as he says in his brief, this is "the one fact which is overshadowing in the whole matter, that there was never an indictment returned in accordance with the Constitution of the State of Missouri."

*Third*:    The record justifies the ruling of the trial court upon the competency of witness George Brazier.    The question whether a boy eight and a half years old is a competent witness must be left largely to the discretion of the trial judge.    The preliminary examination of the witness, as shown by the record, satisfies us, as it did the court below, that he was competent.    His evidence before the jury, subsequently received, is clear and convincing as to his fitness to testify.

*Fourth*:    There was ample evidence to justify the jury in finding that the defendant was able to recall what occurred at the time of the shooting.

*Fifth*: The instructions were full and fair, and counsel for defendant makes no attempt in his brief to argue them insufficient.

*Sixth*: The record shows no prejudicial error in the remarks of counsel for the State to the jury.

Finding no reversible error in the record, the judgment is affirmed.

*Kennish, P. J.,* and *Brown, J.,* concur.

THE STATE ex inf. ELLIOTT W. MAJOR, Attorney-General, v. ROY C. WOODS et al.

In Banc, March 21, 1911.

1. **INCORPORATING CITY: Petition: No Reference to Commons.** A petition presented to the county court praying for the incorporation of a town, is fatally defective, in a direct attack upon the validity of the attempted incorporation, if it omits all reference to the "commons appertaining to such city or town." The word "commons" as used in the statute (Sec. 8529, R. S. 1909) does not mean the thing called and known as "common" in the days of French and Spanish rule in the Mississippi Valley, but is a part of recently enacted law, and includes parks and pleasure grounds, squares and other grounds set apart for municipal or public purposes in villages, towns or cities. If there are no commons the petition should so state, and if there are they should be described therein by metes and bounds.

2. ———: ———: ———: **Inferior Court.** A county court is a court of inferior and limited jurisdiction, and where the statute prescribes what the petition for the incorporation of a town shall contain, that prescription is preclusive and mandatory, and without a strict compliance therewith the court is without jurisdiction to make an order incorporating the city.

3. ———: ———: ———: ———: **Presumptions: Direct Attack.** An information, *ex officio*, by the Attorney-General, in the nature of *quo warranto*, to oust a city of its franchises, on the ground that it has not been legally incorporated, is a direct attack; and upon a direct attack presumptions are not indulged to support or supply the jurisdiction of a court of inferior and limited jurisdiction, but its jurisdiction must affirmatively appear on the face of its proceedings.