John J. Freschi, J.
This is a motion to inspect the minutes of the Grand Jury that presented the indictment filed in this case, charging the defendant with the crime of grand larceny in the first degree.
When the defendant was arraigned before a committing Magistrate upon this charge, he waived examination and was held on his own recognizance to await the action of the Grand Jury, following which he made a request through his counsel, acting on his behalf, for permission to he heard in person before the Grand Jury with reference to such charge. Later, he was notified to attend one of its sessions. The defendant thereupon *266 executed and acknowledged a waiver of immunity, as provided in section 2446 of the Penal Law, and was summoned before the Grand Jury. There, besides the jurors, he was confronted by a Deputy Assistant District Attorney who had charge of the case for the prosecution.
The inquiry having been directed against this accused, he had a right to petition the Grand Jury to be heard personally to explain away the charge, if he could possibly do so. Section 257 of the Code of Criminal Procedure provides : *267 directing that the case be submitted to another grand jury. If the case be considered by another grand jury, it shall not be required to hear the defendant unless a further written request is made upon such grand jury in the manner prescribed by this subdivision.” (L. 1940, ch. 643, eff. April 21, 1940.)
*266 “ Grand jury not bound to hear evidence for the defendant, but may order explanatory evidence to be produced; defendant may appear in his own behalf under certain circumstances.
“ 1. Except as provided in subdivision two of this section, the grand jury is not bound to hear evidence for the defendant; but it is their duty to weigh all the evidence submitted to them, and when they have reason to believe that other evidence, within their reach, will explain away the charge, they should order such evidence to be produced; and for that purpose, may require the district attorney to issue process for the witnesses.
“ 2. When any person has reason to believe that a grand jury is investigating a charge that he has committed a crime, such person, may as a matter of right voluntarily file with the foreman of the grand jury and with the district attorney of the county, a request that he be heard in person before such grand jury with reference to such charge; such request shall be personally served on both the foreman of the grand jury and on the district attorney. Before finding an indictment, in case such a request is so filed the grand jury or the district attorney upon the request of the grand jury shall serve in person or shall send by mail to the address given in such request a notice to the effect that such person will be heard by the grand jury at a given time and place and, before finding an indictment, shall hear such person if he appears at the time appointed, and need not hear any witness on his behalf unless the grand jury so desires, and may permit him to testify under oath and give evidence in his own behalf and may cross-examine him if he so testifies. He shall be allowed to appear and testify only if he executes, acknowledges and files with the county clerk a waiver of immunity as provided in section twenty-four hundred forty-six of the penal law and serves a copy thereof on the district attorney. In case an indictment is found against such person by the grand jury upon which the request was served in violation of this subdivision it shall be set aside by the court upon motion made by the defendant at or before the time of pleading thereto. Nothing herein contained shall prevent the court from
*267 In his affidavit, the defendant avers: “ Shortly after I began giving testimony on my own behalf on this occasion, I was interrupted by the Deputy Assistant District Attorney in charge, who proceeded to cross-examine me with respect to the transaction upon which the indictment herein was based; that I was not given opportunity to fully explain the facts and circumstances surrounding the transaction out of which the indictment arose, and that if the full opportunity which the statute awarded to a defendant had been granted to me, I feel sure that no indictment against me would have been found for the reason that I would have been able to establish the fact that any statements I made with respect to ownership of the property referred to in the indictment, the patent rights, patent applications and other items therein alleged to have been falsely represented, were true. I also had witnesses present who were ready to testify in my behalf. Further, I would have been able to establish that not one dollar of the $750, which the complaining witness charged I obtained from him by false representations was ever received by me and that as a matter of fact, the same had been deposited by the complainant Bloom in a bank account in his own name; that the moneys withdrawn from the said account were withdrawn on checks made by said Bloom; and that all of the moneys were expended in a venture in which he and I were copartners. The only item of the said $750 which was received by me from the complainant was used for the purposes of the copartnership business, and I hold receipts for each dollar expended. Because of the failure of the said Grand Jury to permit me to place all these facts before them, I was denied the right which is accorded by Section 257 of the Code of Criminal Procedure in that a full hearing, as is contemplated by the Code, was not accorded to me.”
A proper consideration of the claims urged by the defense have made necessary an examination of the testimony given by the defendant before the Grand Jury.
The Grand Jury testimony in this case consists of 49 typewritten pages, 19 of which comprise the testimony of the defendant. It appears that the accused was allowed to testify and was cross-examined, after he had complied with the conditions precedent set out in the above-quoted statute.
*268 At first he was interrogated as to whether he knew that he was “ charged with the commission of a crime ”; whether he knew that he was “ about to testify before the Grand Jury ”; whether he knew “ that anything you say here will be written down ” and “ could be used against you on any trial or proceeding ”; to all of which he answered in the affirmative. Then he was interrogated respecting the waiver that he signed, which was received and marked in evidence, and if his attorney did advise him to appear and testify before the Grand Jury. The following excerpts from the examination show some of the questions propounded and the answers of the defendant:
“ Q. Please tell us what you know about what actually happened? A. I did not receive $750 from Mr. Bloom. This money was paid out, nearly all of it, by Mr. Bloom, directly in checks to various people. From the amount that he gave me, something like $230, I paid out moneys far in excess of the $230 that he gave me. I have a list of these amounts; if you wish, I will read them off to you. A full accounting was made at the time because Mr. Bloom said he was going to wreck the business and sue the partnership of Blair and Bloom in the name of Mr. Irving Bloom as assignee.
“ Q. Suppose I ask you a couple of questions. A. Yes.
‘ ‘ Q. And then if you have got anything to add you may do so. I show you a check which has been marked Grand Jury exhibit 5 and ask you if that is your signature on the back (handing to witness) ? A. Yes, that is my signature.
“ Q. Is there anything further you want to say to the Grand Jury? A. No. I have a patent attorney here and my other attorney, and with your permission, if you wish, they are here to testify.”
At the conclusion of the examination which was in question and answer form, the defendant was asked: “ Q. Is there anything further you want to say to the Grand Jury? A. No. I have a patent attorney here and my other attorney, and with your permission, if you wish, they are here to testify.” These witnesses were not heard; nor did the Grand Jury require the issuance of process for them. They “ need not hear any witness on his behalf unless the grand jury so desires ”. (Code Crim. Pro., § 257, subd. 2.)
While a Grand Jury is invested with the power to fix its own methods of procedure, so far as they are discretionary and not violative of any statute or immemorial usage having the force of law (People v. Glen, 173 N. Y. 395, 401; People v. Sweeney, 213 N. Y. 37, 45), a departure, either by tactics or strategy employed or any subterfuge resorted to in order to defeat the *269 purposes and value of this statute, which should not be permitted in any case, would present serious considerations with respect to the validity of the indictment. In fact, the deprivation of, or interference with this statutory right would justify setting aside the indictment.
In all cases, the manner of conducting the hearing depends in large measure upon the good judgment of the Grand Jury, subject always to a review by the court where it clearly appears that the constitutional rights of the accused have been ignored or otherwise violated; but once the accused has offered himself as a witness, he is not immune from cross-examination. The situation created under such circumstances requires, of course, intelligent handling. The better practice, it would seem to me, when this takes place, is to allow the witness a reasonably fair opportunity to give his version of the matter under investigation, at first without interruption and then, if any grand juror or the District Attorney wishes to test or impeach his credibility, he may be cross-examined, just as may be done in the case of a witness who offers himself to testify before a trial jury.
Appreciating that the right of presentation of a fair and full statement by the accused, where he has complied with the statute, is a legal right, we have unbounded confidence in the ability of the grand jurors, serving as they do, in the main, with intelligence and impartiality, to carry out entirely with a spirit of fair play, the objects of this new law.
The defense also makes objection to the presence before the Grand Jury of Deputy Assistant District Attorney Remsen Brinckerhoff on the ground of bias, and claims other abuses occurred in the Grand Jury room in the course of the examination of the defendant, referred to in his affidavit heretofore quoted. The presence of the representative of the District Attorney was not unauthorized or improper. The fair assumption is that he attended as required by the Grand Jury “ for the purpose of examining witnesses in their presence ”. The law imposes it as a duty upon the District Attorney to present evidence before the Grand Jury and to advise them with respect to what constituted indictable crimes. (Code Crim. Pro., §§ 262, 263; see, also, People ex rel. Childs v. Knott, 187 App. Div. 604; People v. Tru-Sport Pub. Co., 160 Misc. 628.)
Another point raised on this motion is that the defendant should have been heard, not alone by a “ mere quorum ”, but, instead, by all of the Grand Jurors who were actually selected and sworn to constitute the legal Grand Jury for the term. Such a rule would be illogical and unreasonable, and would, to say the least, tend to retard the administration of criminal justice. The *270 presence of a quorum is sufficient. Judicial notice must be taken of the fact that on December 10,1941, there were 22 grand jurors actually present when this case was presented and the defendant was given a hearing. The statute controlling provides : ‘1 The grand jury must consist of not less than sixteen and not more than twenty-three persons, and the presence of at least sixteen is necessary for the transaction of any business ’ \ (Code Grim. Pro., § 224.) This number constitutes a quorum. (State v. Connors, 233 Mo. 348; see, also, 35 Words and Phrases, p. 675; People v. Herrmans, 69 Misc. 303, 308.) The concurrence of at least 12 grand jurors is all that is necessary to find an indictment. (Code Crim. Pro., § 268.) The presumption is in favor of the validity of this indictment.
The proper administration of the law is vital both to the State and the subject of the inquiry by a Grand Jury. We must agree that no abuses should be permitted on either side during its sessions, and so long as a correct sense of justice is maintained throughout the hearing, and a fair opportunity is furnished for an explanation, both by the District Attorney and the grand jurors, mere irregularities of procedure in the examination of a witness, which are not prejudicial, cannot be made the basis for quashing an indictment or reopening the Grand Jury inquiry.
Generally speaking, the right to a “hearing” under our system of laws and procedure is one of the heritages of which we are jealous under all circumstances; and when a defendant presses the assertion and claim that it has been denied him, although he was given an opportunity to speak as is shown by the minutes, then something else besides logic and reason may well be supposed to be the basis for his contention. He is not entitled to the same kind of a judicial hearing that he might have, unless he waives it, before an examining Magistrate. I agree, though, that the person being investigated must have an opportunity to tell his story in his own way, under oath, provided his testimony is relevant to the inquiry (Matter of Morse, 42 Misc. 664, 665), subject to cross-examination. The hearing proceeded in this case according to law. (29 C. J., §§ 1-2, pp. 284, 285; see, also, People ex rel. Reech v. Thompson. 94 N. T. 451, 465.)
Whether the statements of the person under investigation constitute an explanation within the circumstances of a given case shall be decided by the Grand Jury in its sound discretion as judges of the facts for their own purposes in the light of the law. They, after all, have, by virtue of their position, a more intimate knowledge of their work and the procedure neces *271 sary and incidental to all such Grand Jury proceedings in their investigation of indictable offenses. They, too, determine credibility, give weight and attach probative force to testimony in determining whether a prima facie case, if all the evidence before them, taken together, is such as in their judgment would, if unexplained or uncontradicted, warrant a conviction by the trial jury (Code Crim. Pro., § 258); and a certain freedom of action is permissible in such matters. (People v. Booth, 52 Misc. 340, 343; People v. Edwards, 25 N. Y. S. 480.)
The defendant further contends that the criminal charge which is the subject of this indictment relates to and arises out of a partnership transaction between the parties, and that the $750 allegedly stolen was “ all expended for partnership purposes ”. It seems to me from a reading of the Grand Jury’s record that this contention presents an issue of fact for a trial jury.
There is a warning in such a motion as this. It seems that we are on the threshold of a new method of attack upon the secret proceedings of our Grand Juries and their indictments. In the past, many varied means have been employed by defendants in other cases in their attempts to pry into the secrecy of Grand Jury proceedings. The secrets of the Grand Jury must be kept in the public interest (Code Grim. Pro., § 265). I have sometimes wondered, and speculation, at times, has it whether or not all this is anything more than a preparatory groundwork to abolish the Grand Jury system. Whatever that purpose may be, we must not be unmindful that even under this new statute (§ 257), the sessions and hearings of the Grand Jury, so long as they are lawful and permissible, must not be regarded and held to be a “ judicial examination of the issue between parties ’ ’. The Grand Jury inquiry, more in the nature of a preliminary examination, should not be subverted and converted into a regular trial like, for instance, a public trial of actions at law or proceedings in chancery, 1 ‘ implying the right to adduce testimony ”, resulting in a judicial determination after a hearing. (29 C. J., § 2, p. 285; Stanton v. United States, 37 F. 252, 255.) There is no necessity for a formal trial, or proving facts on one side and denying them on the other. It merely requires an examination of the charges and an opportunity to make an explanation in reference to them.
Although a Grand Jury must investigate freely, fairly and practically without too many checks, they are not required to hear the whole case from start to finish, and to be held to technical rules of evidence. Their plain duty is to bring to trial in a proper court persons whose identity is established *272 prima facie in the proof of the commission of a crime, and furnish reasonable protection against malicious and unfounded prosecutions on the other hand. For centuries, the Grand Jury, considered a useful and important part of our judicial system, was regarded as one of the most prized safeguards of the citizen against encroachments of governmental power. (Crabb, History of English Law, p. 35; 4 Blackstone’s Comm. [Lewis ed., 1922], p. 302; People v. Herrmans, 69 Misc. 303, 307, supra.) Of course, violations of constitutional rights must be resisted whenever they occur. To secure this, the proceedings must always be in intelligent hands.
The pertinency of this subject may not be particularly involved in the disposition of this motion on its merits, nevertheless it is important to make note of the lessons we can gather from each step taken in this and similar cases.
The court must take the whole of the examination not just a mere part of it, so as to determine whether the defendant has been heard with some reasonable latitude. Taking the whole examination in this case into consideration, the defendant had a hearing within the contemplation of this law wherein the Grand Jury, performing its functions in investigating the facts of the case, took cognizance of, listened to, and received the facts from the defendant for the sake of deciding correctly. Let it be remembered that the right to testify under this statute is personal and individual, unless the Grand Jury wish to hear other evidence.
In passing, notice has been taken of the facts that at no time did the defendant make objection on any ground before the Grand Jury inquest, or protest about the inquiry, the manner or subject of his examination; nor did he decline to answer any question propounded.
Nowhere in the course of the examination does it appear that the District Attorney did anything improperly to influence the findings of the Grand Jurors; and my conclusion on the whole record is that the proceedings were not irregular or contrary to law.
The record reveals nothing to warrant the claim that the defendant’s rights have been violated. I find no fatal defect in the nature or character of the examination, warranting a motion to quash.
This motion for an inspection must, therefore, be denied.