40544. MACH v. THE STATE.

DECIDED FEBRUARY 14, 1964.

*M. Dale English, Garland T. Byrd,* for plaintiff in error.

*Bob Humphreys, Solicitor General, Marcus B. Calhoun, Solicitor General pro tem.,* contra.

HALL, Judge. ■ (a) The defendant's plea in abatement recites that Solicitor General Humphreys filed a petition in the Thomas County Superior Court alleging that "there is now pending . . . *an unusual number of cases* involving illegal dealings in whiskey and lottery violations . . . *that because of this fact* he desires to secure the appointment of a solicitor general pro tem. *to assist him* in handling of these violations before the

grand jury and in the trial of these cases." and praying that "an order issue appointing Marcus B. Calhoun, attorney, as Solicitor General Pro Tem. of the Thomas Superior Court" (Emphasis supplied); and that in response to this petition, the Judge of the Superior Court of Thomas County appointed Mr. Calhoun Solicitor General Pro Tem. of the Thomas Superior Court. The plea further alleges that Mr. Calhoun's appointment as Solicitor General Pro Tem. was illegal and void in view of the fact that the Solicitor General was not absent, indisposed or disqualified from interest or relationship to engage in the prosecution of these cases, and that after the appointment both Mr. Calhoun and the solicitor general attended the grand jury, advised them and swore and examined witnesses before them on this indictment; and that therefore his plea should be sustained and the indictment be quashed.

*Code* § 24-2913 authorizes the presiding judge to appoint a solicitor general pro tem., "When a solicitor is absent or indisposed, or disqualified from interest or relationship to engage in a prosecution . . ." The propriety of the appointment is largely in the discretion of the trial court and the appellate courts will not interfere with that discretion unless it is abused. "When the appointment is made [the appointee] is an officer de facto for any official purpose, and his acts are legal, even if there be some error in the appointment." *Statham v. State,* 41 Ga. 507 (2), 512; *Code* § 102-102 (6).

However, even if we assume that Mr. Calhoun could not have been a solicitor general pro tem. under *Code* § 24-2913, we do not agree with the contention made by the defendant's plea. It matters not what technical description of title is placed upon Mr. Calhoun's appointment, the court will look to the substance rather than the name. It is elementary that a misnomer does not prevail over substance. *Waller v. Morris,* 78 Ga. App. 821, 822 (52 SE2d 583); *Southern Guaranty Ins. Co. v. Beasley,* 106 Ga. App. 64, 65 (126 SE2d 260). Furthermore, the court's order of appointment must be construed in reference to the petition. *Bentley v. Still,* 198 Ga. 743, 746 (32 SE2d 814); *Stanfield v. Downing Co.,* 186 Ga. 568 (1) (199 SE 113). The solicitor general's petition sought the appointment of Mr. Calhoun "to

assist him" in handling pending whiskey and lottery violations before the grand jury and on trial because of the "unusual number of cases" in the Thomas Superior Court. This is in fact what Mr. Calhoun did—assisted the solicitor general before the grand jury on this indictment and in the prosecution of the case. He did not "act in his place." The solicitor general was present and engaged in the performance of his duties both before the grand jury and in the prosecution of the case. It is obvious therefore that Mr. Calhoun was sought, appointed and engaged in the performance of acts which are consistent with the duties of an assistant solicitor general rather than a solicitor general pro tem.

There is no statute of statewide application providing for the appointment of an assistant solicitor general. (For Acts authorizing the payment of compensation or appointment of various assistant solicitors general in counties within a stated population bracket see the Editorial Note following Code Ann. § 24-2904). "Independent of statute, however, courts have long exercised discretionary power to appoint attorneys to assist the prosecuting attorney in criminal cases. . ." 27 CJS 707, § 28 (1); 42 Am. Jur. 242, § 10. Accord Horton v. State, 11 Ga. App. 33, 34 (74 SE 559); Lindsay v. State, 138 Ga. 818, 822 (76 SE 369); Code § 24-2616.

"The almost universal practice is for the prosecuting attorney to appear before the Grand Jury in his official capacity and assist them in their investigation, examining witnesses and advising the Grand Jury on questions of law; but he is not as a general rule permitted to be present during the deliberations and voting of the jury." 4 ALR2d 400; 38 CJS 1039, § 40; Code § 24-2908. "Assistant or deputy prosecuting officers and special assistants to the regular prosecuting officer, duly authorized to assist the latter in the discharge of his duties, are invested with the same rights and subject to the same restrictions, with respect to appearing before the Grand Jury and participating in the proceedings before that body as the regular prosecuting officer. . ." 38 CJS 1043, § 40b; 4 ALR2d 400; Meyers v. Second Judicial District Court, 108 Utah 32 (156 P2d 711); Shoemaker v. State, 58 Okla. Cr. 394 (53 P2d 1133); State v.

Coleman, 226 Iowa 968 (285 NW 269); State ex rel. Graves v. Southern, 344 Mo. 14 (124 SW2d 1176); People v. Blair, 33 NYS2d 183, 189; Commonwealth v. Brownmiller, 141 Pa. Sup. 107 (14 A2d 907). Accord *Clarke v. State,* 44 Ga. App. 341 (161 SE 674); *Christopher v. State,* 21 Ga. App. 244 (94 SE 72); *Williams v. State,* 69 Ga. 11, 28. "But the presence and participation in Grand Jury proceedings of a person assuming the role of a private prosecutor, retained by outside interests for the purpose of obtaining an indictment against particular individuals, is generally considered highly improper." 4 ALR2d 400; 38 CJS 1046, § 40c; 24 Am. Jur. 863, § 43.

The trial judge did not abuse his discretion in appointing Mr. Calhoun to assist the solicitor general in the handling of this and other violations before the grand jury, in response to the petition of the solicitor general showing that there were an unusual number of similar cases pending in the Thomas Superior Court.

(b) The defendant's plea objects to Mr. Calhoun entering upon his duties without being sworn. It not appearing how this prejudiced the defendant, the failure of the court to require Mr. Calhoun to be specifically sworn was not reversible error. *Lindsay v. State,* 138 Ga. 818, 822, supra; *Code* § 89-310; *Statham v. State,* 41 Ga. 507, 512, supra; *Watson v. Dampier,* 148 Ga. 588 (2b, c) (97 SE 519).

(c) The defendant's plea further states that Mr. Calhoun was not an impartial and unbiased prosecuting officer, but had a personal interest in the matters in justifying his actions and advice taken and given professionally for pay. In support of this ground the plea shows that some three months prior to the solicitor general's petition for his appointment Mr. Calhoun was retained by the Mayor and Commissioners of the City of Thomasville, Georgia, as special prosecutor to supervise, direct, counsel and advise in the investigation and prosecution of the suspected liquor and lottery operations in the city about to commence; that Mr. Calhoun accepted this employment and performed these obligations by giving advice and counsel to the mayor, commissioners, and police in their investigations, the procurement of criminal warrants, the framing of charges, and preparation of proposed indictments; and that Mr. Calhoun

stood ready to present these matters to the grand jury and try any indictments returned.

"A solicitor general or prosecuting officer for a particular circuit has only the State for a client. He can not be employed by a private person to prosecute a case, nor to give advice. His is a public duty." *Hicks v. Brantley,* 102 Ga. 264, 271 (29 SE 459); *Nichols v. State,* 17 Ga. App. 593 (87 SE 817). However, a "public prosecutor is necessarily a partisan in the case. If he were compelled to proceed with the same circumspection as the judge and jury, there would be an end to the conviction of criminals." *Scott v. State,* 53 Ga. App. 61, 67 (185 SE 131). It is conceded by the defendant that Solicitor General Humphreys was not disqualified and that both he and Mr. Calhoun appeared before the grand jury, examined witnesses, and advised the grand jury as to this indictment. Mr. Calhoun's employment prior to his appointment was not by any private person but rather by public officials interested in the enforcement of the law within their municipality. We find nothing inconsistent or incompatible in Mr. Calhoun's services to the Mayor and Commissioners of the City of Thomasville with the services he performed in assisting the Solicitor General of the Thomas Superior Court. Both concerned representation of the public interest and both subserve public justice.

The trial court did not err in sustaining the demurrer to the defendant's plea in abatement.

■ The trial court admitted in evidence copies of a "Special Tax Return and Application for Registry-Wagering" and a return for "Tax on Wagering" made by the defendant to the United States Treasury Department, Internal Revenue Service. The special ground of the motion for new trial contends that these copies of public records were not admissible because they were not properly authenticated. A Returns Coordinator of the Internal Revenue Service certified on July 16, 1963, that the copies were true and correct copies of the originals which were in her custody; the District Director of Internal Revenue, by direction of the Secretary of the Treasury, certified, with the seal of his office affixed, on July 17, 1963, that the person whose signature was on the certificate was the duly appointed Returns

Coordinator for the Internal Revenue Service and that she made the certification of the documents, the originals of which were in her legal custody. These certificates establish the elements of authentication—the authority, the incumbency, and the genuineness of the signature of the certifying custodian—as approved for records of the Federal Government in *Pressley v. State,* 207 Ga. 274 (61 SE2d 113). Accord *O'Connor v. United States,* 11 Ga. App. 246 (75 SE 110).

■ The following is a summary of all the evidence presented by the State. The defendant presented no evidence.

An experienced officer of the Thomasville police department testified concerning the method of operation of a lottery known as Bolita or Cuba, and that this type of operation was being carried on in Thomas County in February 1963. Another witness testified that she had participated in Thomas County in operations of a lottery generally called Bolita, that she knew the defendant and that he had been present with her several times in Thomas County where the Bolita operations were being carried on, and that she had seen him take some of the money from the operations.

The documentary evidence is described in Division 2. The "Special Tax Return and Application for Registry-Wagering" covered the period January 15 to June 30, 1963. The defendant stated on this application that his residence address was 725-727 Patterson St., Valdosta, Ga.; that he was engaged in the business of accepting wagers on his own account, and that the business was conducted at 725-727 South Patterson, Valdosta, Georgia "and no fixed address—all over South Georgia"; that he had no employees or agents engaged in receiving wagers on his behalf; that he did not receive wagers for or on behalf of some other person or persons. This return was not dated but was signed and verified by the defendant as owner, and shows that a registry stamp was issued on February 4, 1963. On a like supplemental return for the period July 1, 1962 to June 30, 1963, the defendant made the same statement as to his business; but gave both his residence address and address where his business was conducted as Route 2, Box 279, Moultrie Road, Thomasville, Georgia. This supplemental return was dated February 12,

1963, and was signed by the defendant as "Individual Owner." The return for "Tax on Wagering" was signed by the defendant as owner and dated March 31, 1963. It shows as the gross amount of wagers accepted during the month of February 1963, $1,130; tax due (10%), $113.00.

The tax returns were direct evidence that the defendant had engaged in wagering in February 1963, but only show circumstances relevant to the defendant's alleged operation of a lottery. The circumstance that the defendant conducted a business of accepting wagers is insufficient alone, without connection to other evidence, to show that he operated a lottery or sold lottery tickets.

The police officer's testimony that a lottery was being carried on in Thomas County in February 1963 did not connect the defendant with the operation. The other witness' testimony connected the defendant with a lottery operation, but was silent as to when she or the defendant participated in it. It does not show that the defendant's participation was in February 1963, or that it was within two years before the indictment, or that it was not subsequent to the indictment. Had the indictment not been limited to a specific period of time, proof that the defendant committed the offense at any time within two years before the indictment would have been sufficient. *Duncan v. State*, 71 Ga. App. 841, 843 (32 SE2d 435); *Carr v. State*, 95 Ga. App. 513, 517 (98 SE2d 231).

Since the present indictment was expressly made to apply to the month of February 1963 and to no other time, proof that the defendant committed the offense within the time specified was essential to a conviction. *Martin v. State*, 73 Ga. App. 573, 574 (37 SE2d 411); *Smith v. State*, 74 Ga. App. 777, 788 (41 SE2d 541). The fact that there was a lottery operation in Thomas County at the same time that the defendant resided in and conducted a business of accepting wagers in Thomas County, and that the defendant had at some undetermined time participated in lottery operations in Thomas County, are insufficient to exclude every other reasonable hypothesis except the guilt of the accused. There is no evidence to connect the defendant with lottery operations in February 1963; there are only unexplained

and suspicious circumstances, and these are not sufficient to convict the defendant on this indictment. *Rodgers v. State,* 213 Ga. 797, 803 (102 SE2d 10).

The trial court did not err in overruling the special ground but erred in overruling the general grounds of the motion for new trial.

*Judgment reversed. Nichols, P. J., and Russell, J., concur.*