## 53153. DEPARTMENT OF HUMAN RESOURCES et al. v. BRIARCLIFF HAVEN, INC.

STOLZ, Judge.

The appellee nursing home sued the Department of Human Resources and its commissioner and directors individually to recover the difference between the plaintiff's actual costs for patient care it had rendered during the year 1975 and the first half of 1976, and reimbursements made to the plaintiff under the medicaid program pursuant to ceilings, or maximum payments, set by the department each year based on cost reports from each previous year from medicaid providers such as the plaintiff. The plaintiff alleged that these arbitrary ceilings were necessitated by the insufficiency of funds appropriated by the General Assembly to the medicaid program, which in turn was caused by the defendants' misfeasance, malfeasance and nonfeasance in office in failing to perform their obligation under the law to make annual audits of all nursing home medicaid providers throughout the state, resulting in the payment to certain providers of sums in excess of their actual costs and the payment to others, including the plaintiff, in amounts below their actual costs.

The defendant department appeals from the denial of its motion for summary judgment, supported by an affidavit of its director of the medicaid program identifying the provider agreements between the parties for the period of time involved. *Held:*

"Until recently, the doctrine of sovereign immunity as applied to the state was by judicial decisions only.

"In *Crowder v. Dept. of State Parks,* 228. Ga. 436, 440 (185 SE2d 908) (1971) (with Chief Justice Nichols

dissenting), this court held that sovereign immunity as applied to the state does not violate either the State or Federal Constitution.

"An amendment to the Constitution was proposed in 1973, and ratified in 1974 (Ga. L. 1973, pp. 1489, 1490; Code Ann. § 2-3710), which authorized the General Assembly to establish a State Court of Claims with jurisdiction over cases involving claims for damages against the state, its agencies, or political subdivisions. (No implementation of this amendment has been made by the General Assembly.) This amendment concludes with the sentence: 'Nothing contained herein shall constitute a waiver of the immunity of the State from suit, but such sovereign immunity is expressly reserved except to the extent of any waiver of immunity provided in this Constitution and such waiver or qualification of immunity as is now or may hereafter be provided by act of the General Assembly.'

"In *Sheley v. Board of Public Ed. &c.,* 233 Ga. 487 (212 SE2d 627) (1975), this court reassessed the rule of sovereign immunity in the light of the constitutional amendment above referred to, and held as follows: 'The immunity rule now has constitutional status, and solutions to the inequitable problems that it has posed and continues to pose must now be effected by the General Assembly.' " *Revels v. Tift County,* 235 Ga. 333, 334 (1) (219 SE2d 445) (1975). The "rule in Sheley's case," 233 Ga. 487, supra, further provided that "changes in the immunity rule, and the extent of such changes and in what circumstances are now solely within the domain of the General Assembly of Georgia."

In *Busbee v. Ga. Conference &c. of Univ. Professors,* 235 Ga. 752 (221 SE2d 437) (1975), the Supreme Court recognized the above rule, but found that the Regents of the University System of Georgia had no statutory immunity, based on the fact that a 1785 Act of the General Assembly, expressly waiving the Regents' sovereign immunity, is still in effect. In the Executive Reorganization Act of 1972 (Ga. L. 1972, p. 1015 et seq.; Code Ann. Chap. 40-35), the statute creating the Department of Human Resources (Ga. L. 1972, pp. 1015, 1046 et seq.; Code Ann §§ 40-35101 through 40-35123.5)

contains no express (or implied) waiver of the department's sovereign immunity. Nor has any such legislative waiver been found subsequent to the creation of this department.

It is irrelevant whether the claim against the state, its agencies or political subdivisions sounds in tort or contract. Justice Jordan's dissent in the *University Professors* case, 235 Ga. 752, supra, p. 765, states as follows: "This [1973 constitutional] amendment authorizes the General Assembly to create a State Court of Claims to try and dispose of cases 'involving claims for *injury* or *damage*' against the state and concludes that '[n]othing contained herein shall constitute a waiver of the immunity of the state from *suit,* but such sovereign immunity is expressly reserved except to the extent of any waiver of immunity provided in this Constitution and such waiver or qualification of immunity as is now or may hereafter be provided by act of the General Assembly.' (Emphasis supplied.)

"It is clear from this language of the Constitution that the immunity applies to contracts as well as torts, the word 'injury' being usually applied to a claim arising in tort and the word 'damage' being usually applied to a claim based on a contract. The word 'suit' is all-inclusive and applicable to any type of action. . . In other words, it is an entirely new ball game as far as the doctrine of sovereign immunity is concerned. The General Assembly has not as yet created a State Court of Claims nor has it said what changes and the 'extent of such changes and in what circumstances' shall be made in the rule. What we do know, and what this court has said in *Azizi [Sheley]* and *Revels,* supra, is that the doctrine now has constitutional status, and applies, in my opinion, to any 'suit' involving claims for 'injury' or 'damage' against the state unless and until there is a waiver by Act of the General Assembly. At the present time there is simply no rational basis for making a distinction between a suit in tort and a suit in contract. Therefore, the holding in *Regents, University System v. Blanton,* 49 Ga. App. 602 (176 SE 673) (1933), is no longer viable. Likewise, other opinions of the courts of this state dealing with the judicial application of the rule prior to the 1974 amendment are not applicable to claims

against the state arising since the 1974 amendment.

"The State in this situation has not seen 'fit to disrobe itself of its sovereignty.' See *Georgia Military Institute v. Simpson,* 31 Ga. 273, 277 (1860). Since the General Assembly has taken no action which would allow or sanction an action such as is here involved, the doctrine of sovereign immunity as clearly expressed in the Constitution must be followed. The action is thus barred and the trial court erred in not so holding."

Justice Hall's dissent in the *University Professors* case, 235 Ga. 752, supra, p. 769, cited *Crowder v. Dept. of State Parks,* 228 Ga. 436, 441 (185 SE2d 908) (1971); *Florida State Hospital v. Durham Iron Co.,* 194 Ga. 350, 352 (21 SE2d 216) (1942); *Roberts v. Barwick,* 187 Ga. 691(1 SE2d 713) (1939); *Georgia Military Institute v. Simpson,* 31 Ga. 273, 277 (1860), saying that "[t]hese cases hold that 'whoever contracts with the state trusts to the good faith of the state, unless the state sees fit to disrobe itself of its sovereignty.' They reject the contention that the state impliedly waives state sovereignty in entering into a contract. They hold that sovereignty is only waived by 'express consent of the state.' "

Nor does the present action lie against the individual defendants, who are the commissioner and directors of this state agency. In *Duffee v. Jones,* 208 Ga. 639, 646 (7) (68 SE2d 699) (1952), it was held that when the state agency, "through its members, acts beyond the scope of its lawful jurisdiction and commits an actionable wrong, the act so committed is not 'county [here state] action,' and in such a case a suit may be maintained in the courts of this State against the wrongdoers." In the case sub judice, however, the members of the state department were acting within the scope of their lawful jurisdiction, even though they are charged with an abuse of their discretion in carrying out their duties imposed by the law.

The trial court erred in denying the defendant's motion for summary judgment.

*Judgment reversed. Quillian, P. J., and Shulman, J., concur.*

ARGUED JANUARY 5, 1977 — DECIDED FEBRUARY 28, 1977.

*Arthur K. Bolton, Attorney General, Robert S. Stubbs, II, Chief Deputy Attorney General, Don A. Langham, Deputy Attorney General, Michael J. Bowers, Senior Assistant Attorney General,* for appellants.
*Peek & Whaley, J. Corbett Peek, Jr.,* for appellee.