## 55556. ECHOLS v. DEKALB COUNTY.

BANKE, Judge.

The appellant, Darnell Echols, sued the appellee, DeKalb County, to recover back wages which he claimed he was due. The trial judge granted summary judgment to DeKalb County, and this appeal followed.

Echols worked for DeKalb County as a senior water quality control operator. He alleges that he was promoted and fulfilled the duties of water quality control foreman from July 1974 to May 1975 but never received the corresponding salary increase to which he was entitled. He stated that he repeatedly asked his superiors for the

extra pay, but that he was always given some excuse for the delay in payment. On March 12, 1976, Echols notified the DeKalb County Merit Council of his claim by letter. The merit council heard and denied his claim in June 1976. On July 30, 1976, he filed this action against DeKalb County in the superior court.

The DeKalb County Merit System was created in 1956 (Ga. L. 1956, pp. 3111-3117). Section 4 (b) of the Act authorizes the merit system council "To conduct hearings and render decisions on charges preferred against [county employees] and to hear appeals from any employee who claims to have been improperly dismissed." In this case, Mr. Echols was relieved of his duties as foreman on May 18, 1975, but his employment with the county was not terminated. Thus, the council lacked the authority to render any binding decision on Mr. Echols' complaint.

In bringing his independent suit to recover wages against the county in the superior court, Mr. Echols relied on *Deason v. DeKalb County,* 222 Ga. 63 (148 SE2d 414) (1966). The decision in *Deason* was based on a finding of an implied waiver of the county's immunity from suit. However, as this court, quoting from Justice Jordan's dissent in *Busbee v. Ga. Conference, Am. Assn. of Univ. Professors,* 235 Ga. 752 (221 SE2d 437) (1975), stated with regard to Code Ann. § 2-3401 (Ga. L. 1973, pp. 1489, 1490) (ratified 1974) in *Dept. of Human Resources v. Briarcliff Haven,* 141 Ga. App. 448, 450-451 (233 SE2d 844) (1977): "In other words [because of the 1974 constitutional amendment], it is an entirely new ball game as far as the doctrine of sovereign immunity is concerned. . . What we do know, and what this court has said in *Azizi* (*Sheley*) and *Revels* . . . is that the doctrine now has constitutional status, and applies, in my opinion, to any 'suit' involving claims for 'injury' or 'damage' against the state unless and until there is a waiver by Act of the General Assembly. . . Likewise, other opinions of the courts of this state dealing with the judicial application of the rule prior to the 1974 amendment are not applicable to claims against the state since the 1974 amendment." See also *Health Facility Investments v. Ga. Dept. of Human Resources,* 238 Ga. 383 (233 SE2d 351) (1977); *C. F. I. Const. Co. v. Bd. of Regents,* 145 Ga. App. 471 (243 SE2d 700) (1978).

There is no express statutory waiver of the county's (as an arm of the state) sovereign immunity applicable to Mr. Echols' suit in this case. We affirm, therefore, the trial judge's grant of summary judgment to DeKalb County.

*Judgment affirmed. Bell, C. J., Quillian, P. J., Webb, McMurray, Smith and Birdsong, JJ., concur. Shulman, J., concurs specially. Deen, P. J., dissents.*

ARGUED MARCH 2, 1978 — DECIDED MAY 9, 1978 — REHEARING DENIED JULY 5, 1978 —

*Wayne M. Purdom,* for appellant.
*William S. Olsen, James H. Weeks,* for appellee.

SHULMAN, Judge, concurring specially.

While I am in general agreement with the premise expressed in the second division of the dissent, I feel obliged to take this opportunity to disagree with the first division of the dissent.

The first case cited in the dissent, *Goolsby v. Regents of the Univ. System of Ga.,* 141 Ga. App. 605 (234 SE2d 165), has been misapplied, both in the dissent in this case and in the second case cited in the dissent, *C. F. I. Const. Co. v. Bd. of Regents,* 145 Ga. App. 471 (243 SE2d 700). In both instances, *Goolsby* is quoted as holding: "The doctrine of sovereign immunity is not a bar to the enforcement of constitutional rights. . ." However, in both instances, the second (and most pertinent) half of the sentence was omitted. The complete sentence, placed in context, follows: "In appellant's second and third enumerations of error, he asserts that even if sovereign immunity attached to the Board of Regents immediately upon the repeal of the 1785 Act, as we have held it did, the doctrine cannot be applied here because the appellant's claims are bottomed on guarantees of the Constitutions of Georgia and the United States. That the enumerations are without merit is clear from the holding in Palmer v. Ohio, 248 U. S. 32: 'The right of individuals to sue a State . . . cannot be derived from the Constitution or laws of the United States. It can come only from the consent of the

State.' The doctrine of sovereign immunity is not a bar to the enforcement of constitutional rights; *it merely operates to withhold from the courts jurisdiction over the person of the state, without regard for the basis of the suit." Goolsby,* supra, p. 609. (Emphasis supplied.) *C. F. I. Const. Co.,* supra, and the dissent in this case are in conflict with the holding of this court in *Goolsby,* supra.

Although I do not approve of continued adherence to the doctrine of sovereign immunity, I feel bound by the decisions of the Supreme Court and pronouncements of the General Assembly cited in the majority opinion and in *Goolsby,* supra. It is for that reason that I concur in the judgment of the majority.

DEEN, Presiding Judge, dissenting.
I.

I respectfully dissent based upon the authority contained in *Goolsby v. Regents of the Univ. System of Ga.,* 141 Ga. App. 605, 609 (234 SE2d 165) (1977), "The doctrine of sovereign immunity is not a bar to the enforcement of constitutional rights" (1st and 14th Amendments free speech rights), and *C. F. I. Const. Co. v. Bd. of Regents,* 145 Ga. App. 471, 475 (243 SE2d 700) (1978), "Such a right is that of eminent domain" (5th Amendment U. S. constitutional right as deprivation of property and Art. I, Sec. III, Par. I of 1976 Ga. Constitution; Code Ann. § 2-301). These rights would be an empty shell if the enforcement thereof did not embrace the concomitant right to sue the sovereign, for the denial of this fundamental procedural due process is no less as valuable a constitutional right under the deprivation of "liberty" and "property" of the 14th Amendment than the 1st and 5th Amendments. These two cited cases involve dismissal of a complaint for failure to state a claim. The case under consideration points up a deprivation of 5th and 14th Amendment procedural and substantive constitutional rights. Therefore, I would reverse the trial court's grant of summary judgment.
II.

The judicially adopted or created antiquated doctrine of sovereign immunity should be reviewed and substantially or partially abrogated. See "A Call for

Action," by G. Conley Ingram and Jay D. Bennett, 14 Ga. State B. J. April 1978, p. 152, stating: "Many writers have been quick to point out the inapplicability of the monarchical, semi-religious tenet that 'the king can do no wrong' in a republic that takes pride in being 'a government of laws, not men.' "

I concur with the wisdom expressed by Chief Justice Nichols in his dissent contained in *Crowder v. Dept. of State Parks,* 228 Ga. 436, 441, 442, 444 (185 SE2d 908), pointing out "government has long since waived such immunity," and applying the constitutional mandate: " 'Protection to person and property is the paramount duty of government and shall be impartial and complete,' but we have the provision of the Code that: 'For every right there shall be a remedy, and every court having jurisdiction of the one may, if necessary, frame the other.' Code § 3-105." " 'The common law of force prior to May 14, 1776, was adopted as the law of this State by the act of February 25, 1784, except where modified by statutes or not adjusted to the conditions or system of government existing here.' *Harris v. Powers,* 129 Ga. 74 (2) (58 SE 1038, 12 AC 475). See also *Alexander v. Dean,* 157 Ga. 280, 283 (121 SE 238)." *Crowder v. Dept. of State Parks,* supra, p. 439.

Neither the Constitution of Georgia nor any statute prohibits an individual or other entity from suing the state without its consent. Sovereign immunity is a hybrid form of inherent power or divine rights of kings, the bureaucracy, the despot or ruling power. There is a sharp distinction between, on the one hand, inherent rights, immunity and power of the sovereign, whether it be the judicial, the legislative or the executive, and, on the other hand, inherent, fundamental, natural creator-endowed rights and power contained in the people. When our constitutional republic was set forth our founding fathers rejected the recognition of the inherent power of sovereign immunity by making no provision for a king. More importantly it was unanimously recognized that all inherent, natural and fundamental rights and powers had 100 percent originated in the people as creatures of an omnipotent creator. This had been referred to as the Ciceronian concept perpetuated as "immutable because it

could not be repealed" by John of Salisbury, Judge Henry Bracton, and Chief Justice Edward Coke who said: "Even the king was subject to the higher law." John Locke and Thomas Hobbes debated this concept. Coke and Locke called this higher law in the people as a safeguard from dangers from sovereign power. James Otis, Sam Adams, Patrick Henry, John Adams, Thomas Jefferson, James Wilson and Alexander Hamilton not only emphasized these inherent rights and power in the people in the Declaration of Independence, but breathed it into the U. S. Constitution through enactment of the Bill of Rights. The people retained all rights and power not specifically enumerated to the government. Sovereign immunity was not enumerated; therefore, it could not be an inherent power. The father of our Constitution, James Madison, has said: "The unique American contribution to constitutionalism was based on the doctrine of higher law, because only a higher or a fundamental law superseding the acts of government can be a limitation of government." Alexander Hamilton said: "The sacred rights of mankind are not to be rummaged for among old records or musty parchments. They are written, as with a sunbeam, in its whole volume of human nature, by the hand of divinity itself, and can never be erased or obscured by mortal power."

The above American-adopted concept makes crystal clear that all inherent power and rights originate in the people, not the sovereign. That the rights and powers of the people are supreme and superior to the inferior limited enumerated powers of the judicial, executive and legislative sovereign. No one questions that the fundamental inherent rights of the people act as limitations on governmental power. "Limitations on Judicial Power and Review," Constitutional Law, Lockhart, Kamisar & Choper (June 1975). When an enumerated, inherent or implied power collides, encroaches upon or places a burden upon the superior, natural, fundamental rights, the latter prevails unless a strong compelling interest is demonstrated by the bureaucracy or government. Implied power or inherent power should only be employed when all established means have failed.

The common law of England approved by the Georgia General Assembly February 25, 1784, did not amend the Constitution of the United States nor abrogate due process of law and equal protection of the law. The common law of force May 14, 1776, may have included inherent sovereign immunity, but since we repudiated setting up a royal king, the inherent sovereign immunity doctrine tied to the king was likewise repudiated.

Assuming arguendo (1) that the doctrine was legitimately adopted within Georgia law, and (2) that this ancient and antiquated king or bureaucracy can do no wrong has now achieved unique standing — "The immunity rule now has constitutional status, and solutions to the inequitable problems that it has posed and continues to pose must now be effected by the General Assembly." *Azizi v. Bd. of Regents,* 233 Ga. 487, 488 (212 SE2d 627) (1955). Yet two final important points must be considered: (a) As Justice Felton stated in his dissent contained in *Crowder,* supra, the state appellate courts have never considered and decided whether the state can be sued without its consent in tort cases, cases involving negligent conduct of servants and agents not acting in governmental functions and possibly other cases as these acts comport with the higher inherent constitutional rights as guaranteed such as due process and equal protection of the law. (b) The most devastating all-persuasive point is that the doctrine of sovereign immunity is in all eventuality a governmental inherent power, not a people's right; therefore, when the two collide the former must yield to the latter.

This doctrine was born of another era. The rights of individuals and the justice due to them are as dear and precious as those of the states. See Chisholm v. Georgia, 2 U. S. (2 Dall.) 419 (1793). To place the enumerated power or inherent power of government above the law is morally reprehensible and dangerous as a usurpation of the people's immutable inherent rights. So called inherent powers — judicial, executive and legislative — should be deemphasized and guardedly used. Creator-endowed inherent rights of the people should be magnified and reemphasized. The people are the master and the government the servant. The dog must wag the tail and

not vice versa. As Madison said, this is the only way the people can reassert control and limit a bloated and inflated government lusting for more power. The demise, deflation and deemphasis of the doctrine of sovereign immunity will restore confidence and faith in the "fiber of the rule of law philosophy upon which our society rests." Ga. State B. J., supra.

### III.

Under what is known as Murphy's law anything bad that can happen usually does. This is in reality a manifestation of what is recognized as the best known law of physics and science, the Second Law of Thermodynamics. *Cornett v. Agee,* 143 Ga. App. 55 (237 SE2d 522) (1977). This law states everything perfect, complete, tangible and intangible, including morals, has a tendency downward towards deterioration and decay. "Power corrupts. Absolute power corrupts absolutely." Sovereign immunity and its twin inherent power tends toward might makes right. Instead of lex rex it forces rex lex. Constitutional Law Professor Ben W. Palmer has written an A. B. A. article entitled "Hobbes, Holmes and Hitler." Palmer discusses the overemphasis of a strong sovereign wrapped with inherent power as heading a country toward totalitarianism. He quotes Holmes as suggesting that truth is whatever the strongest sovereign that can whip all others says it is, a type of survival of the fittest.

The executive branch of the federal government does have inherent power or sovereignty as to national security. This power was not authorized under the Constitution but existed prior to adoption of the Constitution by virtue of the execution of the Peace Treaty between the British Empire and the United States (13 independent colonies) of America. The people acknowledged parting of this power by the social contract of forming one United States of America. The federal judiciary has implied power but not inherent power. Judiciaries in different states may have a form of inherent power, but if so the authorization for such must be contained in the Constitution as all rights and powers not written in the Constitution are reserved to the people. The Georgia judicial system has judicial immunity and

implied power from the Constitution and statutory law, but not inherent power.

One example as to erroneous misinterpretation, misuse and abuse of what is referred to as inherent power is in the case of *Collins v. State,* 239 Ga. 400 (236 SE2d 759) (1977). In Division 1 the court correctly held: ". . . the attempt by the General Assembly to enlarge the jurisdiction of this court is unconstitutional." The court is thus saying *no one* can amend the Constitution except by a vote of the people. In Division 3 by order of inherent power the court, in effect, does exactly what it said the Legislature could not do, by itself amending the Constitution as to jurisdiction of the state Court of Appeals. The sovereign rights and exclusive power of ratifying a proposed constitutional amendment was thereby usurped from the people.

Until such time as the courts or General Assembly curtail or partially and substantially deemphasize sovereign immunity and its twin inherent power, so that their constitutional rights will entitle them to their day in court, the injured without a remedy may feel the following words appropriate: "But we are completely mystified and baffled as to how they arrived at such a decision, and we are most grateful that the law does not require that we agree that the Supreme Court is right. We bow and yield to their decision as did Mary, Queen of Scots, a moment before the axe-man brought down the blade. History says that her lips, even after her head was completely separated from her body, continued to form words of prayer. What those words were is not recorded, but perhaps they were 'Forgive them — they know not what they do!' " *Blackmon v. Dixon,* 135 Ga. App. 556 (218 SE2d 639) (1975).