## 68280, 68419. THE STATE v. COOK; and vice versa.
(323 SE2d 634)

CARLEY, Judge.

Mr. Joseph L. Chambers is the Director of the Prosecuting Attorneys' Council (Council) which was established by OCGA § 15-18-40 et seq. The District Attorney for the Eastern Judicial Circuit (District

Attorney) appointed Director Chambers to a position designated as "Special Assistant District Attorney" for that circuit. This appointment of Director Chambers was, according to its terms, "for the purpose of directing and conducting all investigative, pretrial, trial and appellate proceedings in connection with alleged discrepancies in the accounts and records of the Probate Court of Chatham County. . . ." The appointment of Director Chambers also contained the stipulation that it was "to continue at the pleasure of the District Attorney's office." After Director Chambers accepted the appointment, he was duly sworn before a superior court judge of the Eastern Judicial Circuit. Some months later, the District Attorney made two more appointments of Special Assistant District Attorneys for the Eastern Judicial Circuit. The two appointees were Mr. J. Robert Sparks and Mr. Stephen F. Lanier, both of whom were employees of the Council. As with Director Chamber's previous appointment, the appointments of Mr. Sparks and Mr. Lanier related to the Probate Court of Chatham County and were "to continue at the pleasure of the District Attorney's office." The appointments were accepted and Mr. Sparks and Mr. Lanier were then sworn before a superior court judge of the Eastern Judicial Circuit. Subsequently, another employee of the Council, Mr. Olson, was appointed by the District Attorney as a Special Assistant District Attorney.

Appellee-cross appellant Cook is the Judge of the Probate Court of Chatham County. Pursuant to OCGA § 45-11-4, Judge Cook was served with a copy of an indictment which would be sought against him. After the indictment had been served but before it was presented to the grand jury, Judge Cook made a motion to disqualify Director Chambers, Mr. Sparks, Mr. Lanier and Mr. Olson from any involvement in the prosecution against him. Judge Cook's motion to disqualify was premised upon OCGA § 15-18-46, which provides in relevant part that the Council "may not exercise any power, undertake any duty, or perform any function assigned by law to . . . any district attorney. . . ." This motion was heard and denied.

The indictment was then presented to the grand jury. The proceedings were conducted entirely by Director Chambers, Mr. Sparks, Mr. Lanier and Mr. Olson. Neither the District Attorney himself nor any other member of his staff was present. A twenty-six count indictment was returned against Judge Cook. Judge Cook then obtained a certificate of immediate review and petitioned this court for an interlocutory appeal from the denial of his motion to disqualify the Special Assistant District Attorneys. The petition was denied.

Thereafter, when all the superior court judges of the Eastern Judicial Circuit recused themselves, a superior court judge from another judicial circuit was appointed to preside over the case. When yet another indictment was returned against Judge Cook, he filed several

defensive motions. One of Judge Cook's motions again sought the dismissal of the indictments because "[t]he presentation of evidence to the Grand Jury by the Director of the [Council] and his assistants was unlawful and violated OCGA § 15-18-46." This motion was granted, and the State appeals that ruling in Case Number 68280. Another motion sought dismissal of the indictments "due to prosecutorial misconduct, overreaching and oppressive, unconstitutional practices . . . ." In Case Number 68419, Judge Cook cross-appeals from the denial of that motion.

### *Case Number 68419 — Cross-Appeal*

1. The State has moved to dismiss Judge Cook's cross-appeal. Resolution of issues raised by the State's motion to dismiss necessitates the following statement of the chronology of events: On November 15, 1983, the order denying Judge Cook's motion to dismiss the indictments for alleged prosecutorial misconduct was entered. Thereafter, Judge Cook did not comply with the procedure of OCGA § 5-6-34 (b) regarding interlocutory appeals nor did he file a notice of appeal within the thirty days following the entry of the order. Instead, the notice of the instant cross-appeal was filed on January 3, 1984, which was within fifteen days of the service of the State's notice of appeal in Case Number 68280.

"A notice of appeal shall be filed within 30 days after entry of the appealable decision or judgment complained of. . . . *In civil cases,* the appellee may institute cross appeal by filing notice thereof within 15 days from service of the notice of appeal by the appellant; and the appellee may present for adjudication on the cross appeal all errors or rulings adversely affecting him. . . ." (Emphasis supplied.) OCGA § 5-6-38 (a). There is no comparable statutory provision specifically authorizing a cross-appeal in the context of a criminal case. Prior to 1973, there was no reason to anticipate the filing of a cross-appeal other than in a civil case. Until enactment of OCGA § 5-7-1, the State was simply without authority to appeal an adverse ruling in a criminal case. See generally *Bryan v. State,* 3 Ga. App. 26, 27 (1) (59 SE 185) (1907). Accordingly, no remedial purpose was served by extending the right to file a cross-appeal to the defendant who had prevailed in a criminal case. Although, as noted above, the State's total lack of authority to institute an appeal in a criminal case was somewhat modified by OCGA § 5-7-1, there has been no comparable amendment to OCGA § 5-6-38 (a) to extend the applicability of the civil cross-appeal procedure to criminal cases.

This court is without the authority to extend the applicability of the civil cross-appeal procedure of OCGA § 5-6-38 (a) to criminal cases. "An appeal is not constitutionally required in every criminal

case. [Cits.]" *Wilkes v. State*, 129 Ga. App. 907, 908 (2) (201 SE2d 821) (1973). "[T]he right of appeal must be made available by implementation of statute law prescribing the procedural processes to be employed in taking the appeal." *Rogers v. Anderson*, 95 Ga. App. 637, 639 (98 SE2d 388) (1957). The defendant in a criminal case "must pursue *applicable statutcry* requirements." (Emphasis supplied.) *State v. Denson*, 236 Ga. 239, 240 (223 SE2d 640) (1976). There is simply no applicable *statutory* authority for the filing of a cross-appeal in a criminal case.

The viability of what is denominated as a "cross-appeal" in a criminal case must accordingly be based upon the applicable statutory requirements regarding independent appeals and not upon the provisions of OCGA § 5-6-38 (a). Thus, if the "cross-appeal" would otherwise be interlocutory, it must comply with the provisions of OCGA § 5-6-34 (b). See *State v. Tuzman*, 145 Ga. App. 481, 484 (5) (243 SE2d 675) (1978). When the "cross-appeal" would otherwise be directly appealable pursuant to OCGA § 5-6-34 (a), it must comport with the requirements regarding such appeals. See generally *State v. Waters*, 170 Ga. App. 505 (317 SE2d 614) (1984). Under neither theory does this court have jurisdiction over Judge Cook's "cross-appeal." If it is deemed interlocutory, the failure to comply with OCGA § 5-6-38 (b) is fatal. If as the result of the grant of Judge Cook's other motion to dismiss the indictments, his "cross-appeal" is from an order in a case which is no longer pending, the failure to file the notice of appeal within thirty days after the ruling became final is fatal. Case Number 68419 is accordingly dismissed.

*Case Number 68280 — Main Appeal*

We must address three separate issues which are raised by the facts of this case. The first issue concerns the general authority of district attorneys in this state: Whether a district attorney is authorized to appoint *anyone* to serve in the capacity of a "Special Assistant District Attorney" for his circuit. If the law does recognize the authority of a district attorney to make such an appointment, the second issue concerns the specific qualifications of those individuals who were appointed in the instant case: Whether Director Chambers, Mr. Sparks, Mr. Lanier and Mr. Olson were disqualified from their initial appointments by reason of their employment by the Council. If there was no initial disqualification, the third and final issue concerns the actual performance of Director Chambers, Mr. Sparks, Mr. Lanier and Mr. Olson in their capacities as Special Assistant District Attorneys: Whether they were given or exercised too much unsupervised authority in handling the case against Judge Cook.

2. Under former OCGA § 15-18-14, the statutory provision in ef-

fect at all times relevant to this appeal, a district attorney was authorized to "appoint as many assistant district attorneys as there are superior court judges, not including senior judges . . ." and "only assistant district attorneys [so] appointed . . . shall be compensated from state funds." Former OCGA § 15-18-14 (a), (f). It is clear that former OCGA § 15-18-14 was not authority for the initial appointments of the *Special* Assistant District Attorneys in the instant case. "The district attorney in each judicial circuit may employ such additional . . . employees . . . as may be provided for by local law or as may be authorized by the governing authority of the county or counties comprising the judicial circuit. . . . Personnel employed by the district attorney pursuant to this Code section shall be compensated by the county or counties comprising the judicial circuit, the manner and amount of compensation to be paid to be fixed either by local Act or by the district attorney with the approval of the county or counties comprising the judicial circuit." OCGA § 15-18-20. The Special Assistant District Attorneys in the instant case receive no compensation from Chatham County, and it is therefore clear that OCGA § 15-18-20 is not specific statutory authority for their appointments.

Former OCGA § 15-18-14 and OCGA § 15-18-20 do not, however, constitute the sole basis of a district attorney's authority to secure and utilize the services of others to assist in the prosecution of a specific case. Independent of specific statutory authorization, it has long been recognized that attorneys may be appointed " 'to assist the prosecuting attorney in criminal cases . . .' [Cits.]" *Mach v. State*, 109 Ga. App. 154, 157 (135 SE2d 467) (1964). "[T]he [district attorney] may retain counsel to assist him in the trial of the case. [Cits.]" *Hannah v. State*, 212 Ga. 313, 315 (92 SE2d 89) (1956). Thus, it is clear that former OCGA § 15-18-14 merely established the maximum number of *assistant* district attorneys who, as general and on-going members of the district attorney's staff, would be compensated by the State, and that OCGA § 15-18-20 merely provides that the *employment* of additional general and on-going staff members shall be a matter between the district attorney and the county or counties comprising his judicial circuit. Those statutes do *not* necessarily limit the authority of a district attorney so as to prohibit his *appointment* of a *Special* Assistant District Attorney in a *specific* case, pursuant to whatever private arrangements regarding compensation are mutually agreeable to the district attorney and the appointee. See *Vernon v. State*, 146 Ga. 709, 711 (92 SE 76) (1917).

There is no express statutory prohibition on the appointment by a district attorney of a Special Assistant District Attorney. Since such an appointment is premised upon the inherent authority of the district attorney to obtain *assistance* in the performance of his prosecutorial duties, compliance with OCGA § 15-18-5 regarding the

qualifications and appointment of a District Attorney Pro Tem is unnecessary. See *Floyd v. State*, 182 Ga. 549 (1) (186 SE 556) (1936); *Vernon v. State*, supra. Accordingly, we hold that the District Attorney was not limited to obtaining prosecutorial assistance from the ranks of his existing general staff of employees but had general inherent authority to make appcintments to the position of "Special Assistant District Attorney" for the purpose of assisting him in the instant prosecution.

3. The express purpose of the Council is "to assist the prosecuting attorneys throughout the state in their efforts against criminal activity in the state. . . ." OCGA § 15-18-40 (b). As previously noted, however, the Council "may not exercise any power, undertake any duty, or perform any function assigned by law to . . . any district attorney. . . ." OCGA § 15-18-46. Judge Cook asserts that OCGA § 15-18-46 is a statutory disqualification of Director Chambers, Mr. Sparks, Mr. Lanier and Mr. Olson from even initial appointment to the position of Special Assistant District Attorney.

The prohibition of OCGA § 15-18-46 is directed toward the Council. The four Special Assistant District Attorneys in the instant case are not *the Council*; they are merely employees of the Council. We believe that OCGA § 15-18-46 is properly construed as an expression of legislative intent that the Council, *as an entity*, shall have no *independent* prosecutorial authority to act in the capacity of a district attorney but that it shall be strictly limited in its functioning to the expressed purpose for its establishment, to wit: The giving of *assistance* to the prosecuting attorneys of this state. In other words, OCGA § 15-18-46 is merely a prohibition on the *usurpation by the Council* of the powers, duties and functions of a district attorney.

We find no reason why the assistance which the Council is statutorily mandated to provide to district attorneys should not include making the personal services of its employees available to a district attorney upon his specific request. There is no express prohibition on the giving of such assistance. While there is likewise no express grant of authority in this regard, OCGA § 15-18-40 (b) (7) does provide that the Council may give "such other assistance to prosecuting attorneys as may be authorized by law." See also OCGA § 15-18-44 (a) (9). As has already been discussed, district attorneys are implicitly authorized to appoint Special Assistant District Attorneys.

Judge Cook further contends, however, that the appointment of Council employees would be violative of former OCGA § 15-18-14. As noted above, that statute limited the number of appointed assistant district attorneys who could be compensated from state funds. Since Director Chambers, Mr. Sparks, Mr. Lanier and Mr. Olson receive compensation from the State as employees of the Council, the contention is that their appointments would necessarily result in the District

Attorney having more members on his staff receiving state compensation than would be authorized under former OCGA § 15-18-15 (f).

As we have already held, former OCGA § 15-18-14 established a maximum number of assistant district attorneys who could be employed by a district attorney and receive compensation from the State for that employment. That statute had no reference to the number of *Special* Assistant District Attorneys who may be appointed. We find nothing to support the argument that an individual who would otherwise be qualified to serve as a Special Assistant District Attorney is automatically precluded from that service simply because, in another capacity entirely, he receives compensation from the State. The only special "qualifications" that are statutorily mandated for an attorney at law employed by the district attorney who is compensated in whole or in part by state funds is that he "shall not engage in the private practice of law." OCGA § 15-18-21 (a). No contention is made that employment by the Council constitutes "private practice of law" such as would disqualify the four individuals from their initial appointment to serve as Special Assistant District Attorneys. Nor is there any assertion that the four Council employees would not otherwise meet the general qualifications of OCGA § 15-18-21 (b). There is simply no basis for holding that the state compensation otherwise received as employees of the Council is an automatic disqualification of Director Chambers, Mr. Sparks, Mr. Lanier and Mr. Olson from appointments as Special Assistant District Attorneys.

4. It appears that the gravamen of Judge Cook's attack on the appointments in the instant case is his contention that the four individuals were not really appointed to be "Special" Assistant District Attorneys but were given and exercised authority to act as either District Attorneys Pro Tem or as assistant district attorneys.

It is true that the older cases which recognize the authority of a district attorney to appoint an assistant draw a distinction between an appointment limited to *assisting* a district attorney who was physically present during the proceedings and a broader appointment to "act in the place" of a district attorney who was not physically present. See generally *Mach v. State*, supra. However, such cases must be construed in light of the then-existing absence of *any* express statutory authorization for a district attorney to delegate the performance of the duties inherent in the prosecutorial function. Absent such express authorization, a prosecution could, in essence, be pursued solely by the individual who held the office of district attorney. Thus, in order to establish that a district attorney was merely being rendered *assistance* in a prosecution rather than being totally *replaced* in the performance of duties which only he was expressly authorized to carry out, it was necessary that the district attorney's "direction and control" of the proceedings be evidenced by his physical presence.

However, a district attorney now has express statutory authority to employ assistants who "shall have such authority, powers, and duties as may be assigned by [him.]" OCGA § 15-18-21 (b). Supervision of the prosecutorial function as exemplified by physical presence is now specifically required only in the limited case of third-year law students and staff instructors who are not members of the bar of this state and, even then, the district attorney himself need not be physically present. See OCGA § 15-18-22 (d). We construe the existing statutory framework as constituting an express authorization for a district attorney to delegate to his assistants the performance of such of his prosecutorial duties as the law formerly required that he personally perform. Accordingly, any former requirement that a district attorney's "direction and control" of a prosecution be evinced by his physical presence is now obviated.

The only remaining question is whether the requirement of the district attorney's physical presence during a prosecutorial proceeding is obviated in the case of a "Special" Assistant District Attorney. There is little real difference between an assistant district attorney and a "Special" Assistant District Attorney. There is now an express statutory authorization for the appointment of assistant district attorneys as members of the district attorney's general and on-going staff, whereas the appointment of "Special" Assistant District Attorneys is based upon the inherent authority of the district attorney to secure outside assistance in the prosecution of a specific case. If the physical presence of a district attorney is no longer necessary to his "direction and control" over a prosecution which is being conducted at his direction by his general and on-going assistant, there appears to be no reason why his presence should necessarily be required with regard to a prosecution which is being conducted by one whom he has specially appointed for that very purpose. If the "Special" Assistant District Attorney possesses the same qualifications as an assistant district attorney, his authority to render assistance to the district attorney should be no less expansive or restricted. " 'Assistant or deputy prosecuting officers and *special assistants* to the regular prosecuting officer, duly authorized to assist the latter in the discharge of his duties, are invested with the same rights and subject to the same restrictions, with respect to appearing before the Grand Jury and participating in the proceedings before that body as the regular prosecuting officer. . . .' [Cits.]" (Emphasis supplied.) *Mach v. State,* supra at 157. Accordingly, we hold that the mere physical presence or absence of a district attorney at a prosecutorial proceeding is not dispositive of whether a "Special" Assistant District Attorney was under the appropriate "direction and control" of his ostensible superior or was exercising authority in excess of that appropriate to his purported subordinate position.

A proper standard for determining whether a "Special" Assistant District Attorney has been given or has exercised excessive authority is the following: "Under the law the whole proceeding, from the time the case is laid before the [district attorney] until the rendition of the verdict, is under the direction, supervision, and control of that officer, subject to such restriction as the law imposes. Counsel employed to assist in the prosecution of criminal cases can perform no duties as such except those agreeable to and under the direction of the [district attorney.]" *Jackson v. State*, 156 Ga. 842, 850 (120 SE 535) (1923). The law imposed no restriction on the District Attorney regarding the appointment of "Special" Assistant District Attorneys in general or the appointment of employees of the Council to that position specifically. There is nothing in the instant case to demonstrate that the four Special Assistant District Attorneys performed any duty which was not "agreeable" to the District Attorney who appointed them. Compare *State v. Harton*, 163 Ga. App. 773 (296 SE2d 112) (1982). Although Director Chambers' appointment was for the purpose of directing and conducting the prosecution against Judge Cook, there is nothing which would indicate that, in making that appointment and the subsequent appointments, the District Attorney intended to allow the ultimate direction and control of the prosecution to pass from him into the hands of his special assistants. The appointments were clearly contingent upon the District Attorney's continuing "pleasure." Accordingly, we construe the grant of prosecutorial authority as a limited one and find that the prosecution of Judge Cook is being conducted by the District Attorney acting through his authorized assistants and not by the assistants themselves.

5. The trial court erroneously granted Judge Cook's motion to dismiss the indictments.

*Appeal in Case No. 68419 is dismissed. The judgment in Case No. 68280 is reversed. McMurray, C. J., Banke, P. J., Pope and Benham, JJ., concur. Deen, P. J., Quillian, P. J., and Birdsong, J., dissent. Sognier, J., disqualified.*

DECIDED SEPTEMBER 27, 1984 —
REHEARING DENIED OCTOBER 23, 1984

*Spencer Lawton, Jr., District Attorney, Joseph L. Chambers, J. Robert Sparks,* for appellant.

*Dana F. Braun, Tom A. Edenfield, Robert E. Barker, Alexander L. Zipperer III,* for appellee.

DEEN, Presiding Judge, dissenting.

By invoking the concept of "inherent" power, the majority opin-

ion is attempting to accomplish and sanction indirectly that which, by statutory prohibition, cannot be done directly.

The writer sought to distinguish "inherent" power from "implied" power in *Echols v. DeKalb County*, 146 Ga. App. 560 (247 SE2d 114) (1978). "The federal judiciary has implied power but not inherent power." Id. at 567. The former "power" seems to be a more restricted and definable exercise of discretion, while the latter "power" implies an unlimited, autonomous, absolute expression of sovereign authority.

I concur with the majority opinion as to the existence of implied power to procure additional prosecutorial aid in the trial of a particular criminal case. *Hannah v. State*, 212 Ga. 313 (92 SE2d 89) (1956). However, Judge Birdsong's dissent is convincing in its outline of the restrictions of OCGA § 15-18-46, which, in my opinion, would under the facts of this case further curtail and limit the exercise of the independent "implied" powers discussed.

BIRDSONG, Judge, dissenting.

The Prosecuting Attorneys' Council (Council) was formed to be of assistance to the prosecutors of the courts throughout the various state jurisdictions. The statute creating the Council establishes parameters for the exercise of those supportive duties by that Council. The clear language of and limitations inherent in those parameters force me reluctantly to enter my dissent to the well-reasoned opinion of my esteemed brothers.

In substance, the linchpin of the majority's decision is that the members of the Council lawfully may act as special prosecutors in a specified, single jurisdiction because as individuals, the four members of the Council are not acting as a part of or on behalf of the Council as such and further that the four Council members are acting as surrogates for the district attorney and not in a personal capacity.

It is clear, however, that the two special prosecutors did not volunteer or seek leave of absence from the Council. They were requested by the Chatham County prosecutor from the Council to assist the county prosecutor in the investigation, compilation, and prosecution of a complex and difficult criminal case involving a member of the state judiciary. The four members of the Council were made available (i.e., consigned) by the Council for that express purpose, as the majority recognizes in its opinion.

OCGA § 15-18-40 establishes that the primary purpose of the Council is to assist prosecuting attorneys throughout the state in their efforts at successful suppression of criminal activity. The statute however carefully delimits of what that activity may consist. While the authorized activities are intended to be supportive, it would appear that those activities are designed to offer broad suggestions; proce-

dures and practices that provide uniform and effective investigation, development and prosecution of criminal activity in general and not to assist in or act in specific criminal cases. More specifically, the Council may assist district attorneys throughout the state by preparing indices and digests of decisions of appellate courts as well as opinions of other courts; preparation and dissemination of a prosecutor's manual; preparation of model indictments, warrants and other legal documents; training programs; legal research assistance; and as a "catch all," other "lawful" assistance. Applying the doctrine of ejusdem generis to "other lawful assistance," that other assistance must be limited to the same general type assistance as that class of assistance immediately preceeding in the statute.

While undoubtedly it is true that the Council is not on record as seeking affirmatively the prosecution and conviction of Judge Cook, it stretches the common meaning of words to say that the Council did not act when it made available at the request of a district attorney four of its nine members. Without the Council's acquiescence, the special prosecutors could not have responded to the call for help. It seems to beg the question to argue semantically that short of the Council directing the prosecution, it has not acted in its official capacity. Moreover, a conclusion that the four special prosecutors are under the control and thus acting through the Council is supported by the fact that the four members of the Council continued to receive their remuneration from state funds through the aegis of the state-created Council and apparently are still subject to assignment or reassignment by the Council.

OCGA § 15-18-46, its creating legislation, expressly prohibits the Council from exercising any power or undertaking which is the duty and thus may be exercised by a district attorney. OCGA § 15-18-6 et seq. provides that district attorneys are to attend upon grand juries; swear and examine witnesses before grand juries; draw up indictments; and prosecute indictable offenses. There is no question that the employees of the Council were made available to Chatham County to perform each of those functions and did indeed so act.

The only part of the enabling statute pertaining to the Council which could include these supporting functions would be that authorizing the Council to provide other "lawful assistance." In my opinion, the assignment by the Council of its membership to perform duties on behalf of a requesting prosecutor of duties exclusively within the realm of a district attorney violates the proscription of the statute creating the Council prohibiting such activities. OCGA § 15-18-46. Inasmuch as the Council has actively participated in these duties by assigning some of its membership to perform the prohibited activities, the special prosecutors in this case are ineligible to participate in that capacity so long as they are members of the Council. Accordingly, I

would affirm the decision of the trial court in dismissing the indictment as it was obtained in violation of law. The cross-appeal becomes moot upon dismissal of the indictment inasmuch as that is the remedy sought in the cross-appeal as well.

I respectfully dissent. I am authorized to state that Presiding Judge Deen and Presiding Judge Quillian join in this dissent.