68997. HUBBARD v. THE STATE.
(337 SE2d 60)

POPE, Judge.

1. Enoch Hubbard brings this appeal from the trial court's denial

of his "Motion to Dismiss in the form of a motion Autrefois Acquit" based on OCGA § 17-7-170. Such a motion is, in essence, a plea in bar (*State v. Benton*, 246 Ga. 132 (269 SE2d 470) (1980)), the denial of which is not a final judgment and, thus, as a general rule, not directly appealable to this court. See *Hewlett v. State*, 127 Ga. App. 301 (193 SE2d 192) (1972), cert. den., *Hewlett v. Georgia*, 410 U. S. 989 (1973); *Bruce v. State*, 122 Ga. App. 159 (176 SE2d 515) (1970). Although the record on appeal contains a certificate of immediate review from the trial judge, the first step necessary in order to perfect an interlocutory appeal to this court, Hubbard did not pursue the next step by applying to this court for permission to file said interlocutory appeal. See OCGA § 5-6-34 (b). Under circumstances similar to these, this court in *State v. Crapse*, 173 Ga. App. 100 (3) (325 SE2d 620) (1984), dismissed an appeal for lack of jurisdiction. However, in the case of *Smith v. State*, 169 Ga. App. 251 (1) (312 SE2d 375) (1983), we held that "to the extent that the denial of an OCGA § 17-7-170 . . . motion allows the prosecution to proceed, it is an adjudication that the impending trial of the accused will not place him in jeopardy for the commission of a crime for which he has previously been acquitted. To this extent, the denial of an OCGA § 17-7-170 . . . motion is — at the very least — in the nature of a ruling on the accused's double jeopardy rights. If the OCGA § 17-7-170 . . . motion is erroneously denied, and the accused is subsequently tried and convicted, the conviction will be reversed on double jeopardy grounds, but only after the accused has been forced to undergo a trial which never should have been held. [Cit.] Accordingly, the same 'compelling reasons' which led the Supreme Court in *Patterson v. State*, [248 Ga. 875 (287 SE2d 7) (1982)], to hold that the denial of a plea of double jeopardy is directly appealable, lead us to the same conclusion with regard to the denial of an OCGA § 17-7-170 . . . motion. ' "(If) a criminal defendant is to avoid *exposure* to double jeopardy and thereby enjoy the full protection of the [Double Jeopardy] Clause, his double jeopardy challenge to the indictment must be reviewable before that subsequent exposure occurs." (Cits.)' " *Smith v. State*, supra at 252-53. To the extent that the holding in *State v. Crapse*, supra, is in conflict with the decision in *Smith v. State*, supra, it is overruled and will not be followed. See *Hubbard v. State*, 254 Ga. 694 (333 SE2d 827) (1985). Having determined that this court has jurisdiction to entertain Hubbard's appeal, we turn to the merits of the case.

2. Hubbard was indicted, tried and convicted of theft by taking. Following the denial of his motion for new trial, he appealed to this court and obtained a reversal of his conviction. *Hubbard v. State*, 167

Ga. App. 32 (305 SE2d 849) (1983).[1] Hubbard had not filed a demand for trial under OCGA § 17-7-170 after the return of the indictment against him (the only indictment returned in this case). Following the reversal, Hubbard filed for the first time a demand for trial in the court below pursuant to OCGA § 17-7-170 during the same term in which the remittitur from this court was filed. Compare *Dennis v. Grimes*, 216 Ga. 671 (1) (118 SE2d 923) (1961). OCGA § 17-7-170 provides: "(a) Any person against whom a true bill of indictment . . . is found for an offense not affecting his life may enter a demand for trial at the court term at which the indictment . . . is found or at the next succeeding regular court term thereafter; or, by special permission of the court, he may at any subsequent court term thereafter demand a trial . . . (b) If the person is not tried when the demand is made or at the next succeeding regular court term thereafter, provided at both court terms there were juries impaneled and qualified to try him, he shall be absolutely discharged and acquitted of the offense charged in the indictment. . . ." Hubbard did not obtain the special permission of the trial court to file said demand. After Hubbard filed his demand for trial, more than two terms of court passed in which juries were impaneled and qualified to try him. Hubbard moved for dismissal of the charge against him, and, following a hearing thereon, the trial court denied the motion citing Hubbard's noncompliance with the statutory directive mandating the obtaining of special permission from the trial court to file his demand.

Hubbard asserts as unfair under the circumstances in this case the requirement that he obtain special permission of the trial court to file his demand for trial under OCGA § 17-7-170. He argues that because he was first tried at the same term of court at which the indictment was returned against him, he had no need to file a demand for trial at that time. He further contends that since he is now entitled to a new trial de novo and that he "had the right to file a demand for trial at his first trial," he should be afforded the same right at his new trial.

We note at the outset that the reversal of Hubbard's conviction entitles him only to a new trial, not to a new indictment. See *Banks v. State*, 237 Ga. 325 (2) (227 SE2d 380) (1976); 24B CJS, Criminal Law, § 1951. OCGA § 17-7-170 is absolutely clear as to when an accused may of right make a demand for trial thereunder — at the term at which the indictment is found or at the next succeeding regular court term. After that time, such a demand can *only* be made by special

---

[1] This reversal of Hubbard's conviction does not bar a later prosecution under the indictment in this case. The reversal did not adjudge him not guilty of the crime charged, and there was no finding that the evidence did not support the verdict. See OCGA § 16-1-8 (d) (2).

permission of the trial court. The purpose of OCGA § 17-7-170 is to make effective the constitutional directive that in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial. *Reid v. State*, 116 Ga. App. 640 (2) (158 SE2d 461) (1967); *Dickerson v. State*, 108 Ga. App. 548, 552 (134 SE2d 51) (1963). We are mindful that "the courts should seek to uphold rather than whittle away by judicial construction this and other provisions of our Bill of Rights, which secure to us the guarantees of freedom upon which this country is founded." *Rider v. State*, 103 Ga. App. 184, 185 (118 SE2d 749) (1961). See also *Jeffries v. State*, 140 Ga. App. 477 (1) (231 SE2d 369) (1976). Nevertheless, the burden is on an accused to protect his statutory right to a speedy trial by making a timely demand for trial under OCGA § 17-7-170. *Cravey v. State*, 147 Ga. App. 29, 30 (248 SE2d 13) (1978). See also *Sanders v. State*, 132 Ga. App. 580, 582 (208 SE2d 597) (1974). The statute affords no exception to these directives for an accused in Hubbard's position. The record is without dispute that Hubbard complied with *none* of the statutory directives necessary to perfect his demand for trial under OCGA § 17-7-170. "Not having made demand for trial at the term at which the indictment was returned, nor at the next term[,] and not having obtained the permission of the court to make an out-of-time demand, [Hubbard's] claims under the statute are without merit." *Arnold v. State*, 239 Ga. 752, 753 (238 SE2d 876) (1977); *Hatfield v. State*, 139 Ga. App. 535 (228 SE2d 720) (1976).

*Judgment affirmed. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Carley, Sognier, Benham, and Beasley, JJ., concur. Deen, P. J., also concurs specially.*

DEEN, Presiding Judge, concurring specially.
The writer concurs fully with all that is said in the majority opinion. The majority, citing *Rider v. State*, 103 Ga. App. 184, 185 (118 SE2d 749) (1961), and *Jeffries v. State*, 140 Ga. App. 477 (1) (231 SE2d 369) (1976), emphasizes "our Bill of Rights, which secure to us the guarantees of freedom upon which this country is founded." It is appropriate to note that Judge Townsend, speaking in *Rider*, was articulating guarantees provided by the State Bill of Rights rather than those protected by the Bill of Rights under our U. S. Constitution. He uses the language "rights guaranteed by *our* Constitution." (Emphasis supplied.) He was ahead of his day in the development of State Constitutional law.[1]
It must be remembered that the constitutions of most of the original states contained bills of rights which preceded the creation or the

---

[1] *Developments in State Constitutional Law* (B. D. McGraw ed., 1985).

adoption of the Bill of Rights under the U. S. Constitution. Actually, the latter evolved from the creation of the former and not vice versa; therefore, state protections should be paramount and considered on a first priority basis. If the state protections are independent and adequate, the federal protections would be considered only on a secondary basis, and then only if the state protections of the liberties of citizens are not at least equally as broad as federal protections. *Michigan v. Long*, ___ U. S. ___ (103 SC 3469, 77 LE2d 1201) (1983). It should be repeated that our state courts cannot consider liberty issues under the State Constitution unless they are first raised in the trial court.

The father of our Constitution, James Madison,[2] has emphasized that the rights possessed by our people are derived from a higher law and are therefore superior to the powers of the government, and that when the two clash the former must prevail over the latter unless legitimate — sometimes compelling — countervailing interests are demonstrated by the government. Madison magnified the rights of the people and emphasized that the powers of government could be superseded only by a higher or more fundamental law; and that this higher or more fundamental law, embodied in the Bill of Rights, actually constitutes a limitation on the power of government. This thought concept was coined, conceived, created, and considered central by our visionary founding fathers as necessary to contain, curtail, and control over-bloated big-brother bankrupt bureaucracy. These thoughts apply today no less to the State Bill of Rights in its relationship to state and local government than to the Bill of Rights of the U. S. Constitution, as it limits acts of the federal government and now, selectively through incorporation, the state and local governments. Compare *Echols v. DeKalb County*, 146 Ga. App. 560, 563 (247 SE2d 114) (1978), and see "Limitations on Judicial Power & Review," *Constitutional Law*, Lockhart, Kamisar & Choper (June 1975).

DECIDED OCTOBER 30, 1985.

*Michael B. Perry*, for appellant.

*Glenn Thomas, Jr., District Attorney, James A. Chamberlin, Jr., Assistant District Attorney*, for appellee.

---

[2] John Adams, *Works* (Lodge ed., 1881) Vol. 1.