## A91A0883. THE STATE v. COLLINS.
(411 SE2d 546)

McMURRAY, Presiding Judge.

The State appeals from the superior court's grant of defendant Collins' motion to acquit. *Held*:

Defendant, who was already on parole, was arrested on the charges at issue in June 1989. He was held in the Walker County jail until September 1989 and thereafter has been incarcerated in the Georgia State Penitentiary System. No hold or detainer was placed against the defendant in the State penitentiary by the prosecution. On November 9, 1989, defendant was charged by indictment with having committed the offenses of criminal attempt to commit kidnapping, burglary, criminal attempt to commit interference with custody, and simple battery. Pursuant to OCGA § 17-7-170, defendant filed his demand for trial. The demand for trial was filed on December 7, 1989, while qualified jurors were impaneled in the November 1989 term of the Superior Court of Walker County. Qualified jurors were impaneled in a subsequent term of court. Defendant, who took no action to interfere with his case being brought before a jury, was not tried during the two completed terms following his demand for trial.

The issue as phrased by the State is "whether an inmate incarcerated on an unrelated offense in a State Prison, who has never been arraigned, may file a demand for trial that will entitle him to a discharge if not tried in two terms pursuant to O.C.G.A. Section 17-7-170." An affirmative answer is clearly required.

First, we note that since no detainer was filed against defendant, OCGA § 42-6-3 is inapplicable to the case sub judice. We are concerned solely with the application of OCGA § 17-7-170 to the facts of the case sub judice.

The State contends defendant has not complied with the requirements of OCGA § 17-7-170 since he was not physically present and ready for trial during both terms of court following his demand. This presents an interesting issue as to whether such a requirement exists in relation to OCGA § 17-7-170. OCGA § 17-7-171 (b), a similar statute applicable to capital offenses but not to the case sub judice, explicitly requires that at both terms "that the defendant was present in court announcing ready for trial and requesting a trial on the indictment." Such language does not appear in the provisions of OCGA § 17-7-170. This Court has held that the above language from OCGA § 17-7-171 (b) applies only to capital offenses and that there is no similar provision applicable to cases governed by OCGA § 17-7-170. *Ciprotti v. State*, 190 Ga. App. 639, 641 (4) (379 SE2d 802). See also *State v. Crapse*, 173 Ga. App. 100, 102 (3) (325 SE2d 620) (overruled on other grounds, *Hubbard v. State*, 176 Ga. App. 622, 623 (1) (337 SE2d 60)) and *Hunt v. State*, 147 Ga. App. 787, 788 (250 SE2d 517).

On the other hand, there also are cases which require the physical presence of a defendant in the trial court in order to pursue a demand under OCGA § 17-7-170. *Daniels v. State*, 199 Ga. App. 400 (405 SE2d 88); *Luke v. State*, 180 Ga. App. 378, 379 (349 SE2d 391); *Smith v. State*, 169 Ga. App. 251, 253 (2) (312 SE2d 375); *Hendricks v. State*, 108 Ga. App. 259 (1) (132 SE2d 845).

In our view, the correct line of cases recognizes a difference in the language of the two statutes and does not attempt to graft the physical presence requirement of OCGA § 17-7-171 (b) onto OCGA § 17-7-170. OCGA § 17-7-170 is satisfied if a defendant is available for trial, whether physically present in court or not. *Hendricks* and its progeny, including *Smith*, *Luke* and *Daniels*, are overruled to the extent they conflict with our holding in the case sub judice. Nonetheless, we note that the decision in *Luke* would not have been different under our reasoning since that defendant, being incarcerated by a different sovereign, was not available for trial since there is no inherent authority in a court of this State to compel his presence under those circumstances. See *Hunt*. In contrast to *Luke* and *Hunt*, in the case sub judice, the superior court had authority to compel defendant's presence for trial, therefore OCGA § 17-7-170 was fully satisfied since defendant was available for trial. *Flagg v. State*, 11 Ga. App. 37, 38 (2), 39 (4) (74 SE 562). The superior court did not err in granting defendant's motion to acquit.

*Judgment affirmed. Sognier, C. J., Carley, P. J., Cooper, J., and Judge Arnold Shulman concur. Birdsong, P. J., Pope, Beasley and Andrews, JJ., concur specially.*

ANDREWS, Judge, concurring specially.

While I agree with the result of the majority, I disagree with the majority's analysis of OCGA § 17-7-170 and with overruling *Daniels v. State*, 199 Ga. App. 400 (405 SE2d 88) (1991); *Luke v. State*, 180 Ga. App. 378 (349 SE2d 391) (1986); *Smith v. State*, 169 Ga. App. 251, 253 (2) (312 SE2d 375) (1983); and *Hendricks v. State*, 108 Ga. App. 259 (1) (132 SE2d 845) (1963), because I believe the history of OCGA § 17-7-170, including its origins in the common law, reflects that the defendant's presence or lack of voluntary absence is required to trigger discharge and acquittal under that section.

The majority rests its conclusion that the legislature meant to require presence in capital felonies, but not in other crimes, on a comparison of the language of Sections 17-7-170 and 17-7-171. Section 17-7-171, concerned with capital felonies only, specifically mandates that "the defendant [be] present in court announcing ready for trial and requesting a trial on the indictment." This section was not enacted until 1952. Ga. Laws 1952, p. 299, §§ 1, 2, as amended.

Section 17-7-170 had its origins in the English Habeas Corpus

Act of 1679, as incorporated into the law of Georgia. Watkins, Digest of the Laws of Georgia 202 (1800); Schley, Digest of the English Statutes of Force in the State of Georgia 262, 272 (1826). Paragraph VII (2) of the Habeas Corpus Act provides "if any person or persons committed as aforesaid, upon his prayer or petition in open court the first week of the term or first day of the sessions of *oyer* and *terminer* and general gaol-delivery, to be brought to his trial, shall not be indicted and tried the second term, sessions of *oyer* and *terminer* or general gaol-delivery, after his commitment, or upon his trial shall be acquitted, he shall be discharged from his imprisonment." The primary object of this Act was release from prison of the accused. The principles of the Habeas Corpus Act were made a part of Georgia's original and later Constitutions, and the Act in its entirety printed with them as an Appendix. Ga. Const., Art. LX (1777); Watkins, supra at 16 (1800).

Georgia's Penal Code was enacted by the legislature in 1817.[1] Prince's Digest of Georgia Laws, p. 344 et seq. (1820). Section XXIV of that Code states that "[e]very person, against whom a bill of indictment is found, shall be tried at the term of the court the indictment is found, unless the absence of a material witness or witnesses, or the principles of justice, should require a postponement of the trial, and then the court shall allow a traverse or postponement of the trial until the next term of the court; and any person, indicted for an offence not affecting his or her life, and demanding a trial, which demand shall be placed upon the minutes of the court, shall be discharged, upon his or her giving bail to appear at the next court; and if not tried at said court, shall be absolutely discharged and acquitted of the offence contained in the indictment: provided, that at both terms juries were impanelled and able to try such offender; and *every person against whom a bill of indictment has been found, who appears and demands his or her trial*, at the first term after such bill shall have been found, and the officer prosecuting in behalf of the people cannot assign some legal or satisfactory reason for wishing a postponement of the trial, such as the absence of a material witness or witnesses, and a well-grounded expectation of being able to proceed on said trial at the next term; then the person so indicted, and demanding his or her trial, shall be absolutely discharged and acquitted of the offence contained and charged in the indictment." (Emphasis supplied.) This added to the basic habeas corpus principle of release from custody the mandatory acquittal if not so tried upon demand.

In 1833, a new Penal Code was passed. Ga. Laws, 1833, p. 143 et

---

[1] The first penal code never went into operation. On February 24, 1817, the penal code of December 19, 1816, went into effect by proclamation of the governor and operated until December 20, 1817, the effective date of the legislatively enacted 1817 Code. Prince's Digest of Georgia Laws, p. 344, fn. (1820).

seq.; Cobb's Digest of Georgia Laws 832 et seq. (1851). Section XXIV of the 1817 Code was divided into two sections. The portion of that section set out above before the colon became Section 17, while the section following the colon became Section 18. It provided that "[a]ny person against whom a bill of indictment is found for an offence not affecting his or her life, may demand a trial at the term when the indictment is found, or at the next succeeding term thereafter, which demand shall be placed upon the minutes of the court; and if such person shall not be tried at the term when the demand is made, or at the next succeeding term thereafter, Provided, that at both terms there were juries empaneled and qualified to try such prisoner, then he or she shall be absolutely discharged and acquitted of the offense charged in the indictment."

Also to be considered in analyzing OCGA § 17-7-170 is the development of bail in criminal cases at common law and in the colonies. The 1777 Constitution provided that excessive bail would not be demanded. Ga. Const., Art. LIX (1777); Watkins, supra at 15 (1800).[2] It did not mean, however, that bail was available to all charged with crimes. English law at that time provided that no justice of the peace would bail those accused of murder, manslaughter, escape from prison, arson, persons outlawed, and those caught in the act of committing any felony. Bail was a matter of discretion for the justices of the peace for those charged with other felonies and not caught in the act, accessories to felonies, and thieves openly defamed and known. The only persons who had to be bailed by the justices of the peace upon offering sufficient surety were those of good fame charged with mere suspicion of manslaughter or petit larceny or other felonies not included above or accessory to a felony. Only the court of Kings Bench had the discretionary power to grant bail in any case. 4 W. Blackstone, Commentaries * 298-299. When the accused was admitted to bail, it was very different from modern bail. The accused and his sureties having posted security for his appearance, the accused was then to continue in the "friendly custody" of the sureties instead of going to gaol. The sureties were liable to suffer the punishment to which the accused was exposed if he did not appear and the justice or magistrate having set the bail was subject to being fined. Id. at * 297; 2 Pollock & Maitland, History of English Law 589.

Georgia did not recognize an absolute right to bail. *Vanderford v.*

---

[2] The Georgia Constitution was adopted before that of the United States, which was ratified and adopted by Georgia January 2, 1788. Code of Georgia 959 (1861). The Georgia bill of rights was enacted in 1861 by way of a Declaration of Fundamental Principles. Id. The federal Bill of Rights was not proposed by Congress until September 25, 1789. It was ratified by the required number of states on December 15, 1791. The Fourteenth Amendment was ratified on July 28, 1886. Id.

*Brand*, 126 Ga. 67, 69 (2) (54 SE 822) (1906); *State v. Howell*, R. M. Charlt. 120 (Ga. Super. 1821). When an accused was admitted to bail, the condition was not merely that he appear when summoned, but that he remain in attendance on the court until acquitted or in some other manner discharged by the court. *Dennard v. State*, 2 Ga. 137, 138 (1) (1847). There were two terms of superior court a year held in each county and if an accused was convicted, there was no higher court to which he could appeal. Smith, The Early Georgia Constitutions, 16 Ga. B. J. 273, 283-287 (1954). A second trial before a "special jury" could be requested after which the prisoner served the sentence imposed. Id.

It was not until 1921 that it was judicially established that a person accused of a non-capital felony was entitled, after indictment, to bail as a matter of right. *Newsome v. Scott*, 151 Ga. 639, 643-645 (107 SE 854) (1921).

The cases dealing with demand for trial under OCGA § 17-7-170 and its predecessors repeatedly allude to the necessity of the accused's presence and waiver of the demand by voluntary absence. "Under the statute the only prerequisite to a discharge after the second term is that demand shall have been made and allowed, and qualified juries impaneled; but, upon general principles, our courts have raised another exception, namely, that the failure to try be not due to the voluntary act of the prisoner; as, for instance, *voluntary absence from court*, or obtaining a postponement to another term, and the like. In all such cases, the prisoner will be held to have waived his demand. . . . It is not incumbent upon the accused or his counsel to make any further motion or demand at the second term; they may sit mute. The demand having been regularly and lawfully made, the accused may thenceforward rely upon his right to a discharge if the State fails to comply by the end of the second term with the demand already made; *the only duty imposed upon him being that he be not voluntarily absent from the court, and that he shall have done no other act which in law would amount to a waiver*. . . . From this it necessarily results . . . that *the absence of the accused after the second term*, when his counsel moves for a completion of the record by an order of discharge and acquittal, is not reason for refusing to grant the order." (Citations and punctuation omitted and emphasis supplied.) *Flagg v. State*, 11 Ga. App. 37, 39-40 (1, 2, & 3) (74 SE 562) (1912). "While *voluntary absence of the defendant on the call of his case would be a waiver of his demand*, yet, before the State can take advantage of this, the case must be called by the prosecuting attorney and the defendant given an opportunity to respond." (Emphasis supplied.) *Mager v. State*, 21 Ga. App. 139 (3) (94 SE 82) (1917). "The defendant, it is true, may waive his right to insist upon a demand. *If he should absent himself from the court, . . .*, affirma-

tively showing an intention not to insist upon his demand, a waiver would be implied." (Emphasis supplied.) *Thornton v. State*, 7 Ga. App. 752, 753 (67 SE 1055) (1910). See *Durham v. State*, 9 Ga. 306 (1851); *Harris v. State*, 84 Ga. App. 1, 3 (65 SE2d 267) (1951).

The cases sought to be overruled by the majority, *Daniels v. State*, supra; *Luke v. State*, supra; *Smith v. State*, supra; and *Hendricks v. State*, supra, all fall within the rationale set out above.

In *Daniels*, the accused was an out-of-state resident who was not subject to the subpoena power of the Georgia court because he had not come into Georgia to subject himself to that power during the March term in which his demand was filed on the last day. While he was arraigned in the June term, he was not entitled to be discharged in the September term because he had not been present in Georgia to pursue a trial during the March term.

In *Luke*, the defendant had been in State custody on the charge involved when he filed his demand for trial. He was then released to the custody of the federal courts for trial on federal charges. He remained in federal custody despite the efforts of the State to obtain his presence for trial pursuant to the Interstate Agreement on Detainers. OCGA § 42-6-1 et seq. Two terms with juries present passed while this was occurring. The court denied discharge and acquittal because "[t]here is no inherent authority in a court of this state to compel an accused's presence or in-court attendance where such defendant is incarcerated by or in the control of a different sovereign. [Cits.]" *Luke*, supra at 379. The court also found that Luke had affirmatively contributed to the delay by his actions while in federal custody and had not demanded trial under the Interstate Agreement on Detainers, OCGA § 42-6-20 et seq.

Under these circumstances, *Luke* held that a speedy trial is available under the Interstate Agreement on Detainers, OCGA § 42-6-20 et seq.; not OCGA § 17-7-170. *Luke* relied upon *Hunt v. State*, 147 Ga. App. 787 (250 SE2d 517) (1978), one of the cases cited by the majority in support of its position here. That case also dealt with an accused who was in federal custody. Hunt, who was incarcerated under a federal sentence, filed his demand for trial under OCGA § 17-7-170. This court held, not that presence was not required under that section as stated by the majority, but that OCGA § 17-7-170 was not applicable to the situation and the demand filed under it was not effective because the defendant "was not physically present or within the subpoena power of the courts of the State of Georgia." Id. at 789. *Johnson v. State*, 154 Ga. App. 512 (268 SE2d 782) (1980). In *Hunt*, the trial was held within 120 days of the arrival of the prisoner in the receiving state as mandated under the Interstate Agreement on Detainers, OCGA § 42-6-20, Art. IV (c). The State used that agreement to obtain Hunt's presence, the only mechanism available to it for that

purpose.

*Smith* dealt not with presence but with whether the accused had filed an adequate demand initially.

In *Hendricks*, the accused failed to demonstrate that there were juries impaneled and that he was present in court demanding his trial.

*Ciprotti v. State*, 190 Ga. App. 639 (379 SE2d 802) (1989), also relied upon by the majority, is physical precedent only, not binding on this court. Rule 35 (b). To the extent that it can be read as standing for the proposition that presence is not required, it should be overruled.

Finally, the majority cites *State v. Crapse*, 173 Ga. App. 100 (325 SE2d 620) (1984). In that case, the discussion of the requirement of presence in non-capital cases is dicta because defendant had been released from civil commitment to a mental hospital and three terms had passed without trial, entitling him to discharge without relying on the State's argument that the statute was "tolled" while he was committed.

For the reasons stated above, I believe that *Daniels, Luke, Smith*, and *Hendricks* were correctly decided. In the present case, the State had failed to take steps to obtain an accused who was in the custody of the Georgia prison system and therefore subject to the legal process of the State for trial. The State's failure to secure Collins' presence when he was involuntarily absent and subject to its legal process entitled him to discharge and acquittal. Therefore, I concur in the judgment reached by the majority.

I am authorized to state that Presiding Judge Birdsong, Judge Pope and Judge Beasley join in this special concurrence.

DECIDED OCTOBER 15, 1991.

*Ralph L. Van Pelt, Jr., District Attorney, Mary Jane Palumbo, Assistant District Attorney*, for appellant.
*Christopher A. Townley*, for appellee.